**EXXON CORPORATION, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

**Civ. A. No. 1928–73.**

United States District Court, District of Columbia.

Aug. 14, 1974.

756

William Simon, John S. Kingdon, Gary G. Stevens, Howrey, Simon, Baker & Murchison, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Arnold T. Aikens, Michael J. Ryan, Asst. U. S. Attys., Calvin J. Collier, Gen. Counsel, FTC, Gerald Harwood, Asst. Gen. Counsel, FTC, Robert E. Duncan, Mary L. Azcuenaga, Attys., FTC, for defendants.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

This action is brought under the Freedom of Information Act, 5 U.S.C. § 552. Plaintiff Exxon Corporation (hereinafter "Exxon") seeks the production of certain documents in the possession of defendant Federal Trade Commission (hereinafter "Commission"). Jurisdiction is conferred by 5 U.S.C. § 552(a)(3). This court has heard argument on and taken under advisement defendants' motion to dismiss or in the alternative for summary judgment and motions of the plaintiffs relating to discovery from defendant Tobin, Secretary of the Commission.

This is one of the first attempts by a government agency to follow the guidelines set forth in *Vaughn* and *Cuneo*.[1] The court has given it close scrutiny in the light of these guidelines and, for reasons set forth below, concludes that the Commission's efforts pass muster.

On July 9, 1973, counsel for Exxon requested a copy of the Commission's staff report on the petroleum industry (hereinafter "Report"). Subsequently Exxon's counsel requested

> "the opportunity to inspect and copy all communications (including letters, reports or memoranda, and notes, transcripts or other memorialization of oral communications) between January 1, 1970 and August 8, 1973, occurring between the Federal Trade Commission (including any member or employee) and any member of Congress (or employee of the Congress or any member) on the subject of petroleum in liquid or gaseous form,"

and similar communications between the Commission and "any other government agency regarding shortages, allocations, imbalances, availabilities and noncompetitive activities involving petroleum." In essence, Exxon identified a single document and made a blanket request for all other petroleum-related Congressional correspondence and inter-agency documents.

The Commission, through Mr. Tobin, granted Exxon access to Congressional communications, deleting only references that might identify informants, but denied access to the Report and to communications with other agencies, citing exemptions 5 U.S.C. § 552(b)(3) (exempted by statute), 5 U.S.C. § 552(b)(5) (inter-agency memoranda), and 5 U.S.C. § 552(b)(7) (investigatory files). On October 16, 1973, Exxon filed suit to compel disclosure under the Freedom of Information Act.

Shortly after filing suit, Exxon moved for a pretrial order and then for partial summary judgment in an effort to obtain from the Commission a *Vaughn* index, itemizing and cross-referencing the exemptions claimed by the Commission. On December 17, 1973, defendant filed a motion to dismiss or in the alternative for summary judgment. As part of its motion it filed an index of documents withheld, listed under each claimed exemption. In addition, the Commission filed an affidavit of Mr. Tobin attesting to the completeness of the search for documents.

On December 21, 1973, Exxon noticed a deposition of Mr. Tobin. On motion of the Commission, the court quashed the deposition, ordering interrogatories to be used in place of the deposition. Exxon then filed a set of over 200 interrogatories directed to Mr. Tobin, which were answered in part and objected to in part. The court now has before it motions to reinstate the Tobin deposition and to impose sanctions for incomplete answers to interrogatories. The court also has before it defendants' motion to dismiss or, in the alternative, for summary judgment, as well as plaintiff's opposition expressed largely as challenges to the adequacy of the index under the *Vaughn* guidelines and to the appropriateness of summary judgment in view of the limitations on its discovery. At the

---

1. Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973) and Cuneo v. Schlesinger, 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973).

hearing on these motions extensive arguments were advanced. On February 26, 1974, supplemented on March 7, 1974, the Commission submitted the withheld documents to the court for *in camera* inspection. Since the court is relying in part on this *in camera* inspection, defendants' motion will be treated as one for summary judgment.

## RIPENESS FOR SUMMARY JUDGMENT

Exxon argues that this case is not ripe for summary judgment for two reasons. First, there are disputed issues of material fact that require further discovery. In this regard, Exxon has filed the above-mentioned discovery motions. Second, Exxon argues that the indices prepared by the Commission are inadequate under the *Vaughn* standard for a motion for summary judgment.

Exxon's first reason relates to its attempts at further discovery. Exxon seeks this discovery in order to rebut two affidavits of Mr. Tobin. In his first affidavit, filed as part of the Commission's motion to dismiss or in the alternative for summary judgment, Tobin states that he is Secretary of the Commission and legal custodian of the records. He continues by attesting that:

3. Subsequent to the filing of the complaint in this case, I caused a search to be made of the Commission's files in order to locate all the communications described in Paragraph 1 on page 7 of the complaint.

4. In a determined effort to locate all the requested documents as expeditiously as possible, members of my staff actively sought to assist the office of each Commission unit to conduct a thorough search through a series of telephone calls, visits and meetings with the various staff members engaged in conducting the search.

5. To the best of my knowledge and belief, the documents described in the index attached hereto and made a part hereof are all of the documents that have been located to date as a result of this search.

Tobin's second affidavit, filed with the Commission's supplementary indices, reaffirms the substance of the first affidavit, and adds that " . . . I am satisfied that all units in the Commission likely to have any of the documents requested have been directed to submit the relevant documents and I am satisfied that they have done so."

Exxon noticed Mr. Tobin's deposition. After this court directed that discovery from Mr. Tobin be made by interrogatory, Exxon sent Mr. Tobin over 200 interrogatories filling 46 pages. Tobin, assisted by counsel for the Commission, answered in part and objected in part.

Exxon argues that Mr. Tobin's affidavits and answers are, for purposes of a motion for summary judgment, deficient in three respects. First, they were prepared with the assistance of counsel. Second, they are incomplete, leaving open certain genuine issues of material fact. Third, they fail to comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure that such affidavits and answers be made "on personal knowledge."

■ Exxon first claims that the interrogatories answered by Tobin cannot dispose of any material issues of fact because they were prepared with the assistance of counsel. Exxon objects that "Mr. Tobin did not personally and independently answer Plaintiff's interrogatories but was assisted by two attorneys from the Federal Trade Commission. . . . In view of the assistance obtained by Mr. Tobin in answering Plaintiff's interrogatories, the primary thrust of Plaintiff's discovery was defeated."[2] After serving 46 pages of interrogatories on a high administrative official, Exxon's attempt to bar counsel in civil discovery must be deemed frivolous.[3]

---

2. Plaintiff's motion to impose sanctions pursuant to Rule 37, p. 3.

3. Assistance of counsel is clearly contemplated by the Federal Rules of Civil Procedure.

Exxon's more serious arguments relate to the completeness of Mr. Tobin's responses and the necessity for personal knowledge. As a result of Mr. Tobin's failure fully to answer interrogatories, Exxon argues, the following genuine issues of material fact remain:[4]

1. What efforts were actually made to conduct the search attested to in the Affidavit of Charles A. Tobin?

2. What offices, files, personnel or other possible sources of information were not consulted in the course of the search attested to in Charles A. Tobin's Affidavit?

3. What decisions to withhold documents were made prior to any examination of such documents or even any search for such documents?

4. What portions of documents listed in paragraphs 1 and 3 of defendants' purported Index, for which blanket exemptions have been claimed, must be examined by this Court in order to determine whether they contain "purely factual investigative matter" not exempt under the Freedom of Information Act?

5. What documents sought by plaintiff have been withheld by the defendants but not listed in their purported Index?

Question three, asking which decisions were made prior to examining the documents, is legally immaterial. What matters is whether the Commission's decisions not to disclose were justifiable, not when they were made. Question four, unresolved when the statement of issues was filed, has been rendered moot by submission to this court of all documents listed in the index and withheld from Exxon, and by this court's *in camera* inspection of those documents. (See below.)

The remaining three issues of material fact boil down to one—was the search by the Commission adequate and complete in light of Exxon's request? This issue deserves attention.

In his affidavits and interrogatories there is testimony from Mr. Tobin that he supervised a broad and extensive national search of Commission documents. While Mr. Tobin's own efforts were limited, other employees, both in Washington and in the field, spent extensive amounts of time continuing over many months. In his answer to interrogatory 42(t), Mr. Tobin states,

By a thorough search, I mean that to the best of my knowledge, all units of the Commission likely to have any relevant documents were contacted and requested to conduct a search, and each unit was requested to respond by returning all the documents to the Division of Legal and Public Records. To the best of my knowledge, all such units either submitted documents to my staff or informed the staff that they had no such documents.

In the other interrogatories Mr. Tobin describes in general terms his role in supervising the search, but does not give details involving the identities of other participants.[5]

 Clearly then, there is uncontradicted evidence attesting to the com-

---

Rule 33(a) states " . . . The answers are to be signed by the person making them, and the objections signed by the attorney making them . . ."

4. Statement of Genuine Factual Issues filed Pursuant to Local Rule 1–9(g).
Exxon's interrogatories extend in detail to other issues. For example, Exxon seeks a detailed description of the channels of communication in the Commission, an analysis of procedures used by the Commission to memorialize oral messages, an investigation of an alleged "leak" to the *Washington Post*, et

cetera. None of these other questions is within the scope of the Tobin affidavit, and none is material to this action.

5. In its interrogatories, Exxon asks for details of the search ranging from the general to the minute. For example, Exxon asks for the names of everyone participating in the search, and requests a complete accounting of each phone call made from Mr. Tobin's office, listing caller, person called, date, and instructions given. (Interrogatory No. 41).

pleteness and thoroughness of the Commission's search. The remaining question, therefore, is whether Mr. Tobin's statements exhibit the degree of "personal knowledge" necessary under Rule 56(e). In essence, we must decide what kind of evidence is needed (and admissible) to decide whether a search of the scale sought by Exxon has been adequately carried out.

Exxon's frustration in the face of its lack of knowledge is understandable, and is the result of the inherent weakness of the adversary process in Information Act cases first noted in *Vaughn*. The logic of Exxon's argument, however, carries too far. Exxon would require affidavits or testimony to be based on personal knowledge, and would demand that those affidavits cover each aspect and detail of the search. In the typical search for a few documents whose location is clearly defined such requirements cause no problem. But Exxon, by requesting all petroleum-related Congressional and inter-agency communications, has instigated a broad, national search with no inherent limit. To satisfy Exxon's requirement for personal knowledge of each detail of the search—and it is clear from its papers that Exxon demands nothing less—would require sworn testimony from at least one individual working in every office of the Commission, throughout the country. And it must be emphasized that this problem is not unique to the summary judgment stage—it would also hold true at a full-blown trial.[6]

The Court faces an all-or-nothing choice. Either it must allow an affidavit from the supervisor of the search to be conclusive as to its adequacy, or it must let Exxon pursue its discovery down to the level of each individual participating in the search.[7] There is no place in between for judicial line-drawing.

■ Faced with a choice between a decision based on incomplete knowledge and discovery that is unreasonably broad and burdensome, we must return to the language of the Act. The Act specifies that requests must be made only for "identifiable records."[8] The Commission has never objected that the documents sought by Exxon were not "identifiable." This attitude on the part of the Commission is commendable, but it should not waive their right to raise such an objection at a later time. Specificity in the request is needed not only to allow the agency to find the document, but also to enable the agency to demonstrate and the court to assess the adequacy of the search. It would be unreasonable to allow Exxon the extended discovery it wants when it has caused the Commission to search every nook and cranny; its discovery is aimed not at ascertaining whether identified records have been produced, but whether there exist additional records that might be specifically identified by Exxon. It would be unreasonable to read the intent of Congress expressed in the Freedom of Information to require such discovery. Hence, on the basis of the complete record of this case, this court believes that the information provided by the Commission demonstrates the adequacy of its search for all "identifiable records," and that any further discovery by Exxon would be unreasonable. Consequently we hold that any documents not found in the search described by Mr. Tobin or listed in the Commission's indices are not "identifiable records" un-

6. We would not allow trial preparation discovery to extend as far as Exxon's request. Hence there would be no new facts in the record, and we would not be in any better position to rule on the question of the adequacy of the search at trial than we are at summary judgment.

7. These comments do not apply to Exxon's interrogatories that relate to the decisions for and reasons behind the claimed exemptions. While those questions may have been proper when the interrogatories were served, *in camera* analysis by the court, described below, renders these questions immaterial.

8. 5 U.S.C. § 552(a)(3).

der the Act.[9] Thus we reject Exxon's argument that the inadequacy of Mr. Tobin's answers keep this case from being ripe for summary judgment.

Exxon's second contention is that this action is not ripe for summary judgment because the index of documents provided by the Commission does not analyze each document in detail specifying the subject matter area and precise form of the document and itemizing paragraph by paragraph which sections of each document fit under which exemption. In essence, Exxon seeks to stretch *Vaughn* far outside its original boundaries.

■ *Vaughn* did not lay down a *per se* rule to be applied to every Freedom of Information Act case. It rather suggested a technique to assist the court when needed. When there is "a *factual* dispute regarding whether the documents actually fit" the description by the government, and when the government claims multiple exemptions which may apply "to all or only a part of the information," in documents consisting of "hundreds or even thousands of pages," then the government must provide more than mere conclusory allegations with its *in camera* submission. Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820, 824–825. In other words, the index is designed primarily to enable the court to review effectively the agency's decision not to disclose. The extent to which it facilitates adversarial analysis by the party seeking disclosure is a mere by-product. Hence it is within the court's discretion to determine whether a particular *in camera* submission requires an index, and, if so, the degree of specificity required.

■ In this action, the court, after careful *in camera* inspection, finds the index submitted to be adequate for its needs. With respect to the single document identified by Exxon—the Report —the Commission claims that it fits in its entirety under the exemption for investigatory files, 5 U.S.C. § 552(b)(7). Since this exemption can include factual as well as non-factual material, the court agrees. Hence there is no further need for specificity in the index. The remaining items, identified only generally by Exxon but listed by the Commission, are grouped by description under each appropriate exemption. Most of these items are a few pages long, and many consist merely of a few lines of deleted identification material. The court finds the index to be sufficient to enable it to consider whether the documents are properly exempt from disclosure. Hence the court considers this case ripe for summary judgment.

## SUMMARY JUDGMENT

Having decided that this action is ripe for summary judgment, we proceed to examine whether the Commission can properly withhold the documents sought by Exxon.

### A. STAFF REPORT

The Commission claims that the Report is exempt from discovery by virtue of exemptions b(5) and b(7). We need only consider the exemption for "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency". 5 U.S.C. § 552(b)(7). It is undisputed that the Commission lawfully engages in investigations for law enforcement purposes. The record reflects that currently pending before the Commission is an antitrust complaint against eight leading petroleum firms, including Exxon, charging defendants with violating Section 5 of the Federal

---

9. Decisions as to personnel and procedures to be used in the search are within the discretion of the administrator. In the circumstances of this case, the court will not take the "disfavored" step of requiring the Secretary of the Commission "to testify as to the basis of his decision[s]." D.C. Federation of Civic Associations v. Volpe, 148 U.S.App. D.C. 207, 459 F.2d 1231, at 1237 (1972); United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Trade Commission Act, 15 U.S.C. § 45. In the Matter of Exxon Corporation, et al., FTC Docket No. 8934. Recent Court of Appeals opinions indicate that a file compiled for law enforcement purposes is exempt in its entirety and is not subject to the fact-opinion dichotomy applicable to other exemptions. This is so because the exemption is designed to protect the government from having to expose its case prematurely or compromise its investigative techniques and informants. And the exemption applies even when no action is brought,[10] and after a case has been terminated.[11] Nor need there be a showing of threatened harm from disclosure.[12] The trial court's duty is to examine the total record to determine "whether the files sought . . . relate to anything that can fairly be characterized as an enforcement proceeding."[13] While mere conclusory affidavits are insufficient, once the court finds that the material was compiled for law enforcement purposes, its inquiry ends.[14]

■ In the instant situation, there is an ongoing investigation with an existing complaint. The Report, examined *in camera*, was clearly compiled as part of the Commission's investigatory file. Exxon does not dispute this. Instead, Exxon argued that the Commission has waived the exemption by releasing the Report to Congress (and thereby to the public), and that those parts of the report containing factual data do not fall under exemption b(7).

Exxon's waiver argument fails. The Freedom of Information Act itself states that "[t]his section is not authority to withhold information from Congress," 5 U.S.C. § 552(c), and the Federal Trade Commission Act imposes informational duties on the Commission. 15 U.S.C. § 46(f). Clearly Congress intended that it should receive information not available to the public.[15] In any event, Exxon has cited no authority for their proposition that release of selected portions or release to selected persons waives the right to claim an exemption from release of other portions or to other persons.[16]

■ Exxon's claim that factual information contained in the Report must be disclosed (and consequently must be identified by the Commission in a *Vaughn* index) must also be rejected. The fact-opinion dichotomy drawn by the Court of Appeals in *Vaughn* and other cases relates to the application of exemption b(5). When exemption b(7) applies, it exempts the *entire file*. Plaintiffs cite no case, and we have found none, where the fact-opinion dichotomy has been applied to material exempted by the b(7) exemption for investigatory files. Indeed, knowledge that particular factual material is contained in an investigatory file may reveal important tactical choices made by the investigating agency and thereby harm an investigation far more than would knowledge of the actual facts taken outside the context of the investigation.

Consequently we hold that the Report sought by Exxon fits within exemption

10. Ditlow v. Brinegar, 494 F.2d 1073 (D. C.Cir. 1974).

11. Weisberg v. U. S. Department of Justice, 489 F.2d 1195 (D.C. Cir. 1973), (en banc); Aspin v. Department of Defense, 491 F.2d 24, 30 (D.C. Cir. 1973).

12. *Ditlow*, supra, 494 F.2d 1073 at 1074.

13. Bristol Myers Co. v. FTC, 138 U.S.App. D.C. 22, 424 F.2d 935, 939 (1970); *Aspin*, supra, 491 F.2d 24 at 27.

14. *Weisberg*, supra, 489 F.2d 1195 at 1202–1203; Center for National Policy Review on Race and Urban Issues et al. v. Weinberger, 502 F.2d 370 (D.C.Cir.1974).

15. See also *Aspin*, supra, 491 F.2d 24, 26, where the court affirmed the agency's non-disclosure despite the circumstance that the report involved "was given to the Armed Services Committee of both houses of Congress."

16. Cf. Davis, Administrative Law Treatise, 1970 Supp., § 3A.5. As for possible release to the public at large, Exxon's argument proves too much. If the Report has in fact been made public, then Exxon's claim is moot—it already has access to the Report. If parts of the Report have not been released, publication of other parts does not waive the exemption for the entire Report.

5 U.S.C. § 552(b)(7) and is not required to be disclosed by the Commission. Thus we need not consider the Commission's claim that the Report falls under exemption b(5).

## B. CONGRESSIONAL COMMUNICATIONS

The second type of information withheld by the Commission is found in its Congressional correspondence. This correspondence in the main involves letters complaining of various practices by oil companies (including Exxon) that were sent to members of Congress and then forwarded to the Commission. Many of the actual documents are form letters forwarding these complaints and form responses acknowledging them. Most of the letters of complaint are from franchisees and independent station operators, persons who would become subject to retaliation if their identities were known. The Commission has disclosed the Congressional-Commission correspondence only after first deleting names and identifying details. It claims that its deletions are sanctioned by an "informant's privilege," allowed under exemptions b(3) (exempted by statute), b(4) (confidential commercial information), and b(7) (investigatory files.) Again, we need only consider b(7).

■ The identifying details in question clearly fit under exemption b(7). An important purpose behind the exemption is to allow law enforcement agencies to fulfill their responsibilities without divulging their modus operandi or the identities of their informants. This purpose would be jeopardized if Exxon were given the names of those who had complained of its behavior. The invasion of privacy and fear of possible reprisal would keep such information from

the government in the future. As the Second Circuit has said,

"If an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. The agency's investigatory techniques and procedures would be revealed. The names of people who volunteered the information [during the course of] the investigation initially or who [had] contributed information during the course of the investigation would be disclosed. The possibility of such disclosure would tend severely to limit the agencies' possibilities for investigation and enforcement of the law since these agencies rely, to a large extent, on voluntary cooperation and on information from informants." [17]

■ Whether or not an actual investigation was undertaken for any complaint in particular, these complaints were written and forwarded to instigate investigations of violations of the law, and many of them relate to the pending action cited above. Consequently we hold that the identifying details in the forwarded letters were properly deleted under exemption 5 U.S.C. § 552(b)(7).[18]

While we need not decide whether the material also falls under exemptions b(3) and b(4), the court notes that deletion of identifying detail is consistent with guidelines for exemption b(4) expressed in Bristol-Myers Company v. F. T.C., 138 U.S.App.D.C. 22, 424 F.2d 935 at 939 (1970) and Grumman Aircraft Engineer. Corp. v. Renegotiation Bd., 138 U.S.App.D.C. 147, 425 F.2d 578 at 581 (1970), with the statutory mandate to the Federal Trade Commission,[19] and with the Freedom of Information Act itself.[20]

17. Frankel v. Securities and Exchange Commission, 460 F.2d 813 at 817–818 (2nd Cir. 1972), quoted in *Weisberg*, supra, 489 F.2d 1195 at 1199, and in *Aspin*, supra, 491 F.2d 24 at 30.

18. Cf. Evans v. Department of Transportation of the United States, 446 F.2d 821 (5th Cir. 1971).

19. 15 U.S.C. § 46(f) gives the Commission the power "To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest;" . . .

20. 5 U.S.C. § 552(a)(2) provides:
"To the extent required to prevent a clearly unwarranted invasion of personal privacy, an

## C. INTER-AGENCY COMMUNICATIONS

The Commission claims that its withheld inter-agency communications fit under exemptions b(3) (exempt by statute), b(4) (confidential commercial information), b(5) (inter-agency memoranda), and b(7) (investigatory files). The documents can be grouped into three sets.

 The first set, described in sections 3C and 3D of the index,[21] are communications between the Department of Justice and the Commission referring complaints between the agencies for possible use in law enforcement investigations. For reasons given above, these documents are exempt from disclosure under 5 U.S.C. § 552(b)(7).[22]

The second set of documents, listed in 3B and 3E of the index, includes communications relating to either the investigation discussed above (In the Matter of Exxon Corporation, et al.) or to other investigations of the Commission. After in camera inspection, the court finds no reason to doubt the Commission's representation that these documents come from investigatory files compiled for law enforcement purposes. Accordingly, these documents are exempt from disclosure under 5 U.S.C. § 552(b)(7).

 The remaining three documents, listed in 3A of the index, do not relate to an investigation undertaken for law enforcement purposes. They are claimed to be "inter-agency . . . memorandums . . . not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Under the interpretation of EPA v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), exemption b(5) applies to inter-governmental opinions, but does not allow nondisclosure of "purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents." 410 U.S. 73 at 91, 93 S.Ct. 827 at 838. After inspecting the three documents in camera, the court finds that none of the three contain factual material that can be severed from the remaining portions of the document without jeopardizing disclosure of the opinions expressed in those documents. Consequently these three documents are exempt from disclosure under 5 U.S.C. § 552(b)(5).

Accordingly we do not reach the application of exemptions b(3) or b(4) to any of the inter-agency communications.

For reasons expressed in this memorandum, it is, this 13th day of August, 1974,

Ordered that plaintiff's motion for a pretrial order and motion for partial summary judgment, be, and hereby are, denied as moot, and it is further

Ordered that defendants' motion for summary judgment be, and hereby is, granted, and it is further

Ordered that plaintiff's motion to reinstate the deposition of Charles A. Tobin and motion to impose sanctions for failure to answer interrogatories be, and hereby are, denied.

agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction."

21. The index includes exhibit B of the motion of defendants to dismiss or, in the alternative, for summary judgment, filed December 17, 1973, and supplemental indices filed March 6, 1974.

22. The Commission does not claim exemption b(7) for those communications in 3C, letters referring complaints to the Department of Justice. These letters also refer to complaints intended to lead to law enforcement investigations, however, and therefore also fit under b(7).