**Harold WEISBERG, Appellant,**

v.

**U. S. DEPARTMENT OF JUSTICE, et al.**

**No. 75–2021.**

United States Court of Appeals, District of Columbia Circuit.

Argued 3 June 1976.

Decided 7 July 1976.

James H. Lesar, Washington, D. C., for appellant.

Michael H. Stein, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellees.

Before ROBINSON and WILKEY, Circuit Judges and JAMESON,* United States Senior District Judge for the District of Montana.

WILKEY, Circuit Judge:

Following our decision en banc in *Weisberg v. Department of Justice*[1] the Freedom of Information Act was amended[2] to facilitate access to certain investigatory files, those previously falling within Exemption 7. Plaintiff Weisberg accordingly renewed his request for scientific investigatory data compiled after the assassination of President Kennedy and the wounding of Governor Connally, alleged to be in the files of the Federal Bureau of Investigation and the United States Energy Research and Development Administration (formerly the Atomic Energy Commission). In the course of this renewed litigation under the Freedom of Information Act plaintiff made certain demands for the production of information and addressed interrogatories to the Department of Justice. After back and forth demands, responses, and conferences, which we need not detail here, data in various forms was furnished plaintiff, which he claims to be insufficient.

In hearings held on 21 May and 15 July 1975, the District Court (Pratt, J.) refused to order the Government to respond to plaintiff Weisberg's interrogatories,

---

\* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).

2. Act of 21 Nov. 1974, Pub.L. No. 93–502, § 2, 88 Stat. 1563, *amending* 5 U.S.C. § 552(b)(7) (1970).

which it described as "oppressive," [3] found that the Government had "complied substantially" with plaintiff's demands [4] and accordingly granted defendants' motion to dismiss the action as moot.[5] The Government defendants' position, sustained by the District Court, was that all data which existed and which had been described in plaintiff's request had been furnished, and that other data for which Weisberg repeated his demands did not exist. Before reaching this overall conclusion that the Government defendants had "complied substantially," the trial court made no detailed findings of fact, nor did it list any material relevant facts as not in dispute and relied upon to support a summary judgment.

In response to his demands in this Freedom of Information Act suit plaintiff has received letters from Government officials, affidavits from Government employees, some scientific data which he requested, and other scientific data which he maintains he did not request and does not need; he has had conferences with Government officials; and he has heard the statements and arguments of Government counsel in court. He has not received *all* of the data which he has demanded and which he claims still to exist or to have existed at one time. He has not received an answer to any of his interrogatories, nor has he had the opportunity to examine a single live witness either on deposition or on trial before the District Court.

■ We make no attempt to unravel the conflicting claims, assertions, or responses, but we have identified certain demands which appear not to have been answered satisfactorily by the Government defendants, *i. e.*, demands which raise material factual questions still in dispute.

1. *Final reports of spectrographic analysis*—The FBI claims it does not have such "final reports" as sought by Weisberg. The FBI asserts that Special Agent Gallagher made an oral report of spectrographic analysis to Special Agent Frazier, who incorporated the oral report in a comprehensive report to the Dallas police, which is a public document, and which has been turned over to Weisberg. The Government asserts this is all there is. Special Agents Gallagher and Frazier are now retired from the FBI but both are living, yet no testimony or affidavit has been received from them.

2. *Neutron activation analyses of bullet fragments*—The FBI asserts that these were very small samples and have been turned over to Weisberg. Plaintiff thinks there is more. The analyses were performed at the Oak Ridge National Laboratory with FBI participation. Apparently no one with personal knowledge of this has testified or furnished affidavits. The Government representative furnishing information by letter to plaintiff originally furnished incorrect information, which subsequently was corrected.

3. *Raw data of the spectrographic and neutron activation analysis tests*—Weisberg claims that some of this has been withheld, particularly raw data on the Jarell-Ash spectrographic analysis. The FBI maintains that the only report of this is on a worksheet already furnished Weisberg, and that the Jarell-Ash spectroghaphic analysis results are on that worksheet.

4. *Neutron activation analysis testing of clothing*—Plaintiff maintains he has been promised the results of such testing and that he has not received this, although admitting that he has received certain related materials from the National Archives. The FBI responds that the neutron activation

**3.** Transcript of Hearing on 21 May 1975 at 22, Joint Appendix (J.A.) at 185; Transcript of Hearing on 15 July 1975 at 19, J.A. at 205.

**4.** Transcript of Hearing on 15 July 1975 at 19, J.A. at 205.

**5.** *Id.* Although the District Court dismissed this action as moot, it relied upon affidavits outside the pleadings on review, and therefore

this court must treat the dismissal as a grant of summary judgment in favor of defendant. Fed. R.Civ.P. 12(c); *Dorado v. Kerr*, 454 F.2d 892 (9th Cir.), *cert. denied*, 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed.2d 188 (1972). Thus, we must determine whether a genuine issue as to any material fact remains to be resolved. Fed.R. Civ.P. 56(c). If so, we must remand to the District Court.

analysis testing has not been furnished because it was never done, and that the statement in the original affidavit mentioning such testing was an error subsequently corrected by the responsible FBI Special Agent.

5. *Emissions spectroscopy*—This allegedly was used to determine the elemental composition of the borders and edges of holes in clothing and metallic smears present on a windshield and a curbstone. The FBI maintains that the results were inconclusive and such results as the FBI has were furnished in the spring of 1975 as part of the raw data given Weisberg.

The above listing is probably not all of the factual areas which are in dispute between the parties, but the listing of these five indicates that summary judgment was clearly inappropriate. The Government's assertion to the District Court that the "[c]ase has been settled by fully producing all material sought by plaintiff's Freedom of Information Act request . . . that is, all laboratory data concerning the John F. Kennedy assassination investigation"[6] was certainly unwarranted. The Government's effort to respond to plaintiff's request has consisted of furnishing information by affidavits executed by agents now in the employ of the FBI who have examined the Bureau's files. None of these agents participated in the original investigation, and there are at least three agents, retired from the FBI and identified by plaintiff, who have not been heard by deposition, affidavit, or in court.

█ Plaintiff's attempt to secure information from the Government defendants by interrogatories was not the most efficient means, if used alone, of gaining access to the whole story, but it was chosen as a preliminary first step to outline parameters of discovery and as being the most economical means available to plaintiff. We think

in these circumstances plaintiff was entitled to insist on his interrogatories being answered and that they should not have been dismissed by the trial judge as oppressive.

It may be that plaintiff would now be well advised, given the totality of discovery, irregular as it may be, which he has been afforded, to proceed with depositions or a court hearing.[7] Certainly plaintiff later must do so. Although the choice of discovery methods is normally up to the litigant, we cannot cast all the blame on the Government defendants here. Part of the reason for plaintiff obtaining unsatisfactory responses undoubtedly lies in the fact that plaintiff has been addressing inquiries only to the opposing parties, who by this date in history are nothing but file custodians with no personal knowledge of the matters in issue.

The data which plaintiff seeks to have produced, if it exists, are matters of interest not only to him but to the nation. Surely their existence or nonexistence should be determined speedily on the basis of the best available evidence, i. e., the witnesses who had personal knowledge of events at the time the investigation was made. This cannot be done by interrogatories addressed to a party, although this might serve to narrow the scope of inquiry. It must be done with live witnesses either by deposition or in court.

Decades ago Dean Wigmore said that cross-examination "is beyond any doubt the greatest legal engine ever invented for the discovery of truth."[8] We think it time for the trial court to start the engine running, and thereafter make detailed findings as to what the evidence adduced establishes. Accordingly, we remand this case to the District Court for further proceedings under the Freedom of Information Act not inconsistent with this opinion.

*So ordered.*

---

6. Defendant's Calendar Call Certification (2 May 1975), J.A. at 36.

7. While we think the trial judge should not have quashed the interrogatories *in toto* as "oppressive," we do not rule out a detailed evaluation of individual questions, if plaintiff renews them and the trial judge so desires, given the discovery plaintiff has already received.

8. 5 J. Wigmore, Evidence § 1367 at 32 (Chadbourn rev. 1974).