EXXON CORPORATION, Plaintiff,

v.

FEDERAL TRADE COMMISSION et al., Defendants.

Civ. A. No. 78–0530.

United States District Court,
District of Columbia,
Civil Division.

Nov. 17, 1978.

William Simon, John S. Kingdon, Howrey & Simon, Washington, D. C., for plaintiff.

Mark Kurzmann, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

This case arises under the Freedom of Information Act ("FOIA").[1] Plaintiff Exxon requested documents from the Federal Trade Commission ("FTC") relating to an ongoing FTC adjudicative proceeding in which Exxon is a defendant. Plaintiff invokes this Court's jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), challenging the thoroughness of the FTC's search for responsive documents and the FTC's refusal to disclose certain admittedly responsive material it does possess.

### I. Findings of Fact

On July 18, 1973, the FTC issued a complaint against, i. a., Exxon Corporation (the "Exxon case"), alleging that anticompetitive conditions in the petroleum industry violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1976).[2] The FTC has asserted without contradiction by plaintiff that the Exxon case is the largest case ever brought by the Commission. To aid the FTC in the prosecution of the Exxon case, the Commission's staff has retained a number of economic consultants to provide advice and assistance in developing litigation strategy and designing the effective use of resources devoted to the case. Among the products of this collaboration is a report prepared by a panel of economists (the "Final Economic Report"), described by the FTC as containing an "in-depth evaluation of aspects of the theory of the case and the evidence supporting these aspects, discussions of possible future litigation strategies, and areas of possible inquiry for further economic analysis." Document # 12, defendants' index.

The Exxon case is currently in the stage of pretrial discovery. On April 17, 1978, Exxon filed a motion with the administrative law judge in that case for issuance of a subpoena duces tecum to direct complaint counsel to produce the Final Economic Report. Administrative Law Judge Berman denied Exxon's motion on the grounds that the economic report, containing assessments of strategy, evaluations and recommendations about theory development and discovery, was clearly attorney work product and therefore privileged.[3] Order of June 2,

---

1. 5 U.S.C. § 552 (1976).
2. In the Matter of Exxon Corporation, et al., FTC Docket No. 8934.
3. Exxon also requested, by separate motion, issuance of a subpoena ad testificandum direct-

ed to Darius Gaskins, former head of the Commission's Bureau of Economics and the Commission official responsible for employing the economists who prepared the Final Economic Report, requiring him to appear for a deposi-

1978, FTC Docket No. 8934, Berman, Administrative Law Judge.

Prior to the filing of its motion with the administrative law judge to obtain discovery of the Final Economic Report, Exxon, through counsel, had made a request to the FTC under FOIA for three categories of documents regarding the *Exxon* case or the issues of that case:

> All documents which constitute, refer or relate to any oral or written communication . . . during the period January 1, 1977, to the date hereof
>
> (a) between any Commissioner of the Federal Trade Commission . . . or any member of such Commissioner's staff, and any Federal Trade Commission employee . . .
>
> (b) between any Commissioner of the Federal Trade Commission . . . or any member of such Commissioner's staff, and any private party . . .
>
> (c) between any employee of the Federal Trade Commission who is directly or indirectly engaged in the pending FTC Docket No. 8934 adjudicative proceeding and any private party. . . .[4]

The FTC granted partial access to the documents responsive to Exxon's request.[5] Exxon appealed the partial denial to the General Counsel of the Federal Trade Commission. The General Counsel released additional documents (or portions thereof) and advised Exxon that the remaining documents (or portions thereof) were being withheld pursuant to exemptions 5, 7(A) and 7(D) of FOIA.[6]

As a result of Exxon's October 25, 1977 FOIA request, the FTC located approxi-mately 2,000 pages of responsive documents; of these, approximately 1,200 pages are on public record. Of the remaining 800 responsive pages, the FTC has released approximately 425 pages, or approximately 53% of the responsive pages located that are not on the public record.

On March 24, 1978, Exxon filed the present complaint with this Court for injunctive relief, challenging the FTC's claims to exemption for the responsive documents withheld in whole or in part, including the Final Economic Report.

Defendants have provided an index of the 64 documents withheld in whole or in part, describing the portions withheld and the exemptions claimed.

Defendants have also produced an affidavit by Carol Thomas, Secretary of the Commission, describing and attesting to the adequacy of the FTC's search for responsive documents, and an affidavit by Roger Pool, complaint counsel in the *Exxon* case, further explaining defendants' reasons for claiming each exemption.

The index and affidavits provided by defendants are relatively detailed and nonconclusory. For example, document # 2 is described in defendants' index as follows:

> (2) Undated. *From* economist. *To Exxon* panel and FTC staff. Analysis of one aspect of theory of case and role of government agencies in relation to that aspect, including characterization of conditions in petroleum industry, and suggestions for further information to be gathered.

The index also records that both exemptions (b)(5) and (7)(A) are claimed by de-

---

tion. Exxon asserted that it sought to depose Mr. Gaskins in order to determine facts relating to the circumstances surrounding development of the Final Economic Report. Judge Berman denied Exxon's motion for the subpoena *duces tecum,* observing that "Respondents may not obtain by deposition what they are not entitled to through subpoena of documents." Order of June 2, 1978, p. 5, FTC Docket No. 8934, Berman, Administrative Law Judge.

4. Letter dated October 25, 1977. This request was modified, pursuant to an understanding between the parties, to exclude communica-tions with Environmental Impact Statement consultants, communications with *Exxon* case respondents and communications with a computer company with which the FTC has an ongoing contract.

5. Letter dated November 10, 1977, from Carol Thomas, Secretary of the Commission.

6. Letters dated January 10 and 13, 1977, from Michael Sohn, General Counsel of the Commission.

**1092**

fendants for this document. This example is typical of the entries in defendants' index.

Plaintiff has not alleged, nor has defendants' showing exhibited to the Court, anything other than good faith compliance with FOIA by defendants.

Defendants have filed a motion for summary judgment. In the course of its consideration the Court ordered defendants to produce three disputed documents *in camera*. The so-called Blue Minutes of May 24 and July 29, 1977 (documents # 61 and # 62) and the Final Economic Report (document # 12).

The Court has examined these documents *in camera* and, as more fully described below, finds that the Blue Minutes contain, among other things, some facts which are already public and some account of pre-decisional, deliberative communications within the Commission. The Final Economic Report contains pretrial tactical and strategic advice about a pending case to defendants' counsel from consulted specialists.

## II. *Conclusions of Law*

This case is now before the Court on defendants' motion for summary judgment. In opposition, plaintiff raises in the first instance its need for additional discovery pursuant to Fed.R.Civ.P. 56(f). The Court has ordered that discovery be stayed pending decision on the motion for summary judgment. (Order of August 11, 1978.) The discovery issue will be considered before turning to the merits of defendants' motion for summary judgment.

A. *Plaintiff's motion for discovery pursuant to Fed.R.Civ.P. 56(f).*

Plaintiff's initial response to defendants' motion for summary judgment takes the form of an affidavit of counsel, John S. Kingdon, pursuant to Fed.R.Civ.P. 56(f),

explaining that plaintiff is unable to respond to factual statements in defendants' affidavits or to formulate its full opposition to defendants' motion without first obtaining certain discovery. Plaintiff states that its discovery "seeks information concerning the retention of the economists engaged in the *Exxon* study, the involvement of Commission employees in the preparation or supervision of the Economists' Report, and the use and distribution of documents reflecting the subject matter of the Report." Plaintiff's Opposition to Defendants' Motion for Close of Discovery, p. 2. Plaintiff also seeks discovery to respond to defendants' affidavit in support of the completeness and thoroughness of defendants' search for responsive documents. Accordingly, plaintiff outlines the following plan of discovery that it feels it must undertake in order adequately to respond to defendants' motion for summary judgment: the deposition on written questions of FTC Commissioners Pertschuk, Dole and Clanton, the oral deposition of complaint counsel in the *Exxon* case, Roger Pool, the oral deposition of Kenneth Elzinga, Professor of Economics at the University of Virginia and believed by plaintiff to have been involved in the preparation of the Final Economic Report,[7] and the oral deposition of Keith Golden, a paralegal in the FTC's Office of the Secretary, alleged by plaintiff to have been given responsibility for coordinating the FTC's search for documents responsive to plaintiff's October 25, 1977, FOIA request. Kingdon affidavit, ¶¶ 4–8.

The discovery requested by plaintiff is intended to uncover facts in support of three different legal contentions: (1) that defendants are not entitled to claim any privilege, and specifically no attorney work product privilege, for the records withheld

**7.** Defendants neither confirm nor deny that Professor Elzinga was involved in the preparation of the Final Economic Report. Defendants claim that the names of the participating economists are privileged from disclosure pursuant to exemption (b)(7)(A) of FOIA. Defendants' claim of exemption rests on the assertion that disclosure of the names of the retained economists would reveal significant aspects of the

FTC's underlying economic theory of the *Exxon* case, since each economist is well known to advocate a particular type of economic theory or application of economic theory. Such disclosure, defendants argue, would be particularly important where, as in the *Exxon* case, the FTC's theory of liability is based primarily on structural economic evidence rather than on behavior.

(oral deposition of complaint counsel Pool, oral deposition of Professor Elzinga; Kingdon affidavit at ¶¶ 6–7), (2) that defendants have waived any exemption for the records withheld (deposition on written questions of Commissioners Pertschuk, Dole and Clanton, oral deposition of Professor Elzinga; Kingdon affidavit at ¶¶ 5 and 7), and (3) that defendants have failed to search adequately for documents responsive to plaintiff's October 25, 1977, FOIA request (oral deposition of Keith Golden; Kingdon affidavit at ¶ 8).

We shall examine plaintiff's need for discovery in light of each of the legal contentions for which plaintiff would like to find further evidence.

### 1. *Adequacy of Defendants' search.*

■ Plaintiff seeks to discover facts relating to the adequacy of defendants' search for responsive records but does not put at issue defendants' claim, supported by the Thomas affidavit, that defendants' search was complete and thorough. Rather, plaintiff seeks to argue that, *ab initio,* it deserves an opportunity to discover facts that may controvert the evidence submitted by defendants.

The law does not support plaintiff's position. Our Court of Appeals has very recently reiterated its position on this matter. *Goland v. CIA,* No. 76–0166, slip op. (D.C. Cir. May 23, 1978). In *Goland,* plaintiffs also claimed the right to pursue discovery before the District Court decided defendant's motion for summary judgment on the basis of defendant's affidavits. The District Court denied plaintiffs the discovery they sought and awarded defendant summary judgment. The Court of Appeals affirmed the decision of the District Court:

> "In determining whether an agency has met [its] burden of proof [on summary judgment], the trial judge may rely on affidavits . . .. The agency's affidavits, naturally, must be 'relatively detailed' and nonconclusory and must be

submitted in good faith. But if these requirements are met, the district judge has discretion to forgo discovery and award summary judgment on the basis of affidavits". *Id.,* at 24. (footnotes omitted).

Although the defendant in *Goland* was a security agency against which discovery might appear to be particularly inappropriate, the District Court's discretion to foreclose discovery and consider a motion for summary judgment solely on the basis of agency affidavits is not limited to cases where the defendant is a security agency. *See, e. g., Nolen v. Rumsfeld,* 535 F.2d 890 (5th Cir. 1976); *Exxon Corp. v. FTC,* 384 F.Supp. 755 (D.D.C.1974), *remanded,* 174 U.S.App.D.C. 77, 527 F.2d 1386 (1976), *dismissed,* No. 73–1928 (D.D.C. 28 Feb. 1977) (limiting discovery where affidavits demonstrated adequacy of search); *Association of Nat'l Advertisers, Inc. v. FTC,* 1976–1 Trade Cases, ¶ 60,835 (D.D.C.1976) (where record indicates that agency search was "reasonably thorough," discovery may be limited by court). In *Association of Nat'l Advertisers,* plaintiff had raised detailed questions about the adequacy of the FTC's search and wished to proceed to discovery. Then Chief Judge Jones denied discovery,[8] observing that:

> "Discovery of facts relevant to each of these questions inevitably would lead 'down to the level of each individual participating in the search.' [*Exxon Corp. v. FTC,* 384 F.Supp. 755, 760 (D.D.C.1974)]. To permit such discovery in a case such as the instant one, where the request for access is Commission-wide, and where the Secretary of the Commission has already stated under oath that the search was Commission-wide and complete, would be to permit unnecessary harassment of agency officials". 1976–1 Trade Cases at 68,644.

■ In the present case defendants have submitted an affidavit of the Secretary of

---

**8.** Judge Jones did allow limited discovery through interrogatories as to a question raised

by plaintiffs to which defendants offered no explanation. 1976–1 Trade Cases at 68,644.

the FTC, Carol M. Thomas, to support their assertion that their search for responsive documents was complete and thorough. The Thomas affidavit explains that upon receipt of plaintiff's request she directed the Information and Privacy Acts Branch of the Information Division of her office to commence a diligent and complete search for the documents in question. All the offices that could have been in possession of responsive documents were sent copies of the request with instructions to search for responsive documents. All records in the possession of each Commissioner were completely searched, as were all records in the possession of the Bureau of Competition, the Office of General Counsel, and the Office of Secretary.

The Court is of the opinion that the Thomas affidavit is sufficient on its face to demonstrate the adequacy of defendants' search. The affidavit explains in reasonable detail the scope and method of the search and plaintiff has alleged no failure or inconsistency of proof in the matter.

A court should not, of course, cut off discovery before a proper record has been developed; for example, where the agency's response raises serious doubts as to the completeness of the agency's search, *see*, e. g., *Association of National Advertisers v. FTC, supra* at p. 68,644, where the agency's response is patently incomplete, *see*, e. g., *Virginia Independent Schools Ass'n v. Commissioner,* 1976–1 USTC, ¶ 9322 at p. 83,761 (D.D.C.1976), or where the agency's response is for some other reason unsatisfactory, *see*, e. g., *Weisberg v. U. S. Department of Justice,* 177 U.S.App.D.C. 161, 163, 543 F.2d 308, 310 (1976). But here defendants have submitted a reasonably detailed, nonconclusory affidavit explaining their search and there is no question raised as to defendants' good faith. Accordingly, the Court concludes that defendants' motion for summary judgment can and should be resolved without allowing discovery by plaintiff as to the adequacy of defendants' search. *Goland v. CIA, supra,* and cases cited therein.

2. *Entitlement of Defendants to exemption (b)(5) because of privilege for attorney work product.*

Plaintiff also seeks discovery concerning defendants' contention that a number of the withheld documents are exempt from disclosure pursuant to exemption (b)(5) because they constitute attorney work product. *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

As discussed above, the Court has discretion in a FOIA case to forego discovery and decide the case on the basis of reasonably detailed, explanatory affidavits submitted by the agency in good faith. *See also Mead Data Cent., Inc. v. U. S. Dept. of Air Force,* 184 U.S.App.D.C. 350, 370, 566 F.2d 242, 262 (1977). This is no less true with respect to agency affidavits averring that identified documents are exempt than it is with respect to affidavits averring that all identifiable documents have been produced. *See Goland v. CIA.* No. 76–1800 (D.C. Cir. 1978). slip op. at 24.

Here there is no serious claim that the agency affidavits and index are defective or insufficient, *compare Brandon v. Eckard,* 187 U.S.App.D.C. 28, 34, 569 F.2d 683, 689 (1977) (A conclusory affidavit does not entitle a court to ignore claims that an allegedly exempting statute does not apply because of the nature of the materials or the failure to follow proper procedures), or that there exist conflicting affidavits with respect to material issues of fact, *compare Sears, Roebuck & Co. v. GSA,* 180 U.S.App. D.C. 202, 206, 553 F.2d 1378, 1382 (1977).

Defendants have disclosed 53% of the responsive documents located that are not on public record and have provided a relatively detailed index and accompanying affidavits, identifying and explaining the exemptions claimed for each document or portion thereof. There is no question of defendants' good faith. In light of defendants' showing and the absence of any controverting allegations by plaintiff, this Court declines to withhold its consideration of defendants'

motion for summary judgment pending discovery by plaintiff.[9]

### 3. *Waiver of defendants' entitlement to exemption (b)(5).*

Plaintiff also seeks discovery regarding the possible "waiver" by defendants of their claim to a (b)(5) exemption. Plaintiff argues, and this Court agrees, that the attorney work product privilege can be waived as a result of the actions of the party seeking to assert it. *U. S. v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In an appropriate case, therefore, the waiver of a work product privilege might amount to a waiver of exemption (b)(5). Plaintiff here, however, has advanced no reasons for the conclusion that defendants have, by their actions, made the application of the work product privilege inappropriate. *Compare U. S. v. Nobles, id.* (attorney electing to present investigator as witness waived work product privilege with respect to matters covered in his testimony).

Plaintiff's real argument here does not rest on a notion of "waiver" at all. Plaintiff seeks to discover whether any impermissible *ex parte* communications regarding the economists' study took place between a Commissioner (or his staff member) and any other party that would oblige the FTC to make the subject of such communications part of the public record pursuant to the FTC's own regulations. 16 C.F.R. § 4.7 (1978).[10] Documents thus required by law to be disclosed to the opposing party in litigation with the FTC, plaintiff argues, no longer fall within the scope of exemption (b)(5), since that exemption protects only records "which would not be available by law to a party other than an agency in litigation with the agency".

Plaintiff's argument is misconceived, however, in that it supposes the availability of exemption (b)(5) to turn on the particular circumstances relevant to discovery between plaintiff and defendant in the *Exxon* case. In *Sterling Drug Inc. v. F.T.C.,* 146 U.S.App.D.C. 237, 450 F.2d 698 (1971), the

9. This is not to say that defendants' submissions are sufficiently detailed and revealing to justify an award of summary judgment in defendants' favor. *See* p. 14 f., *infra.* The Court's ruling on plaintiff's 56(f) motion is without prejudice to plaintiff's seeking discovery at a later time if defendants' supplemental submissions are inadequately responsive to the Court's direction here.

10. This regulation provides in relevant part: (b) *Prohibited ex parte communications.* While a proceeding is in adjudicative status within the Commission, except to the extent required for the disposition of *ex parte* matters as authorized by law, (1) no person not employed by the Commission, and no employee or agent of the Commission who performs investigative or prosecuting functions in adjudicative proceedings, shall make or knowingly cause to be made to any member of the Commission, or to the Administrative Law Judge, or to any other employee who is or who reasonably may be expected to be involved in the decisional process in the proceeding, an ex parte communication relevant to the merits of that or a factually related proceeding; and (2) no member of the Commission, the Administrative Law Judge, or any other employee who reasonably may be expected to be involved in the decisional process in the proceeding, shall make or knowingly cause to be made to any person not employed by the Commission, or to any employee or agent of the Commission who performs investigative or prosecting [sic] functions in adjudicative proceedings, an ex parte communication relevant to the merits of that or a factually related proceeding.

(c) *Procedures.* A Commissioner, the Administrative Law Judge or any other employee who is or who may reasonably be expected to be involved in the decisional process who receives or who makes or knowingly causes to be made, a communication prohibited by paragraph (b) of this section shall promptly provide to the Secretary of the Commission: (1) All such written communications; (2) memoranda stating the substance of and circumstances of all such oral communications; and (3) all written responses, and memoranda stating the substance of all oral responses to the materials described in paragraph (c)(1) and (2) of this section. The Secretary shall make relevant portions of any such materials part of the public record of the Commission, pursuant to § 4.8, and place them in the docket binder of the proceeding to which it pertains but they will not be considered by the Commission as part of the record for purposes of decision unless introduced into evidence in the proceeding. The Secretary shall also send copies of the materials to or otherwise notify all parties to the proceeding.

FOIA plaintiff advanced the same type of argument, seeking to defeat the FTC's claim to a (b)(5) exemption on the ground that it had the right to discover the documents in question in a collateral lawsuit being pursued contemporaneously with the Commission. The Court of Appeals rejected this interpretation of exemption (b)(5). Instead, the Court of Appeals observed:

> "The correct test for determining which documents are not exempt under § 552(b)(5) is [that] . . . any internal memorandums which would routinely be disclosed to a private party through the discovery process in litigation with the agency would be available to the general public". 146 U.S.App.D.C. at 244, 450 F.2d at 705.

The Court of Appeals emphasized that the question was whether a private party, not a particular litigating plaintiff, would routinely be entitled to the documents through discovery. Id., 146 U.S.App.D.C. at 244, 450 F.2d at 705. Exemption (b)(5) calls for the application of general principles of civil discovery, see EPA v. Mink, 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); see also Mead Data Cent., Inc. v. U.S. Dept. of Air Force, 184 U.S.App.D.C. 350, 360, 566 F.2d 242, 252 (1977), to determine if the documents at issue would normally be privileged.

■ Accordingly, the particular claims of a particular litigant related to a particular lawsuit cannot affect the application of exemption (b)(5) in an independent FOIA action. The Court concludes that plaintiff's requested discovery with respect to the "waiver" issue is unnecessary because it would be irrelevant. If plaintiff believes that the special circumstances of its case in conjunction with FTC regulations on ex parte communications entitle it to have some or all of the affected documents placed on the public record, the proper way to pursue that claim is to follow the administrative appeal procedures laid down by Congress and the FTC. Congress did not intend FOIA to be used as an avenue for the kind of collateral attack attempted by plaintiff here.

The Court concludes that plaintiff is not, as a matter of right, entitled to discovery regarding defendants' search for responsive documents or their claim of exemption (including the alleged "waiver" thereof) for documents located. Upon the showing of defendants in this case the Court furthermore declines, as a matter of discretion, to allow such discovery. Accordingly, the Court denies plaintiff's motion under Fed.R. Civ.P. 56(f) to make discovery and turns to the merits of defendants' motion for summary judgment.

### B. Defendants' motion for summary judgment.

The Court finds defendants' factual showing, as reflected in its affidavits and its in camera submission, requires partial summary judgment in defendants' favor, and requires further submissions before decision on other issues raised by defendants' motion.

### 1. Documents not examined in camera.

■ Defendants have failed in their affidavits to provide the Court with sufficiently specific explanations, for each manageable portion of each document withheld, of the grounds supporting each exemption, and each theory advanced in support of each exemption, claimed. For example, defendants seek to invoke both "deliberative process" and "work product" theories in support of their claim to exemption (b)(5) for some documents, but the supporting affidavit, the Pool affidavit, fails to offer any systematic, detailed explanation of which documents are supposed to fall under one theory, which are to fall under the other, and which are to fall under both. The Pool affidavit also lacks the specific, detailed explanations of legally relevant facts necessary to enable a FOIA defendant to prevail on summary judgment. See generally Mead Data Cent., Inc. v. U. S. Dept. of Air Force, 184 U.S.App.D.C. 350, 566 F.2d 242 (1977). Specific statements about a single document or patently indistinguishable

groups of documents are preferred to sweeping statements about categories of documents. In addition, little effort has gone into showing that every manageable portion of every document withheld qualifies for exemption under any or all of the theories advanced by defendants. *See Ray v. Turner,* 190 U.S.App.D.C. 290, 587 F.2d 1187 (1978) and *Marks v. CIA,* 191 U.S.App. D.C. 295, 590 F.2d 997 (1978).

Finally, defendants' affidavit, the Thomas affidavit, in support of the claim that there are no "final opinions" within the meaning of 5 U.S.C. § 552(a)(2)(A) among the documents withheld is obviously conclusory and therefore inadequate. *Compare Bristol-Myers v. FTC,* No. 76–1364 (D.C. Cir. August 22, 1978). Accordingly, the Court declines to grant or deny the balance of defendants' motion for summary judgment until they have had an opportunity to submit additional affidavits pursuant to the order attached hereto.

To be most helpful to the Court, the additional affidavits might take the form of a much-expanded index, proceeding, for each document, to explain what the smallest manageable portions are, describing why each such portion is entitled to each exemption claimed, and under what theories. A separate affidavit, also in index form, could explain the extent to which any document for which an exemption is claimed: (i) falls within the affirmative disclosure provisions of 5 U.S.C. § 552(a)(2)(A)–(C), and (ii) is (or is not) incorporated by reference into any other document either currently withheld or released pursuant to 5 U.S.C. § 552(a)(2)(A)–(C).

2. *Documents examined in camera.*

Pursuant to the Court's Order of September 18, 1978, defendants have submitted for *in camera* inspection copies of two Blue Minutes (documents # 61 and # 62) and the Economic Report (document # 12).

Examination of these documents by the Court further confirms the Court's impression, noted above, that defendants have failed to fulfill their obligation to disclose segregable portions of non-exempt material. Defendants seek to withhold all three documents in full pursuant to exemption (b)(5).[11] This exemption allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

█ Exemption (b)(5) was intended, *inter alia,* to protect "the decision making processes of government agencies." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). This deliberative process privilege has its core in "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 150, 95 S.Ct. at 1516. As a matter of logical extension of this principle courts have established the general rule that pre-decisional, deliberative memoranda are privileged, while post-decisional memoranda—communications designed to explain a decision already made—are not, *Bristol-Myers Company v. FTC,* No. 76–1364, slip op. at 7 (August 22, 1978); *Jordan v. U. S. Department of Justice,* 192 U.S.App. D.C. 144 at 165, 591 F.2d 753 at 774 (1978); nor are segregable portions of factual material which would not expose the deliberative process. *Mead Data Cent., Inc. v. U.S. Dept. of Air Force,* 184 U.S. App.D.C. 350, 370, 566 F.2d 242, 256 (1977); *compare Mervin v. FTC,* 192 U.S.App.D.C. 212 at 216, 591 F.2d 821 at 825 (1978).

Applying these standards to the two Blue Minutes in the present case the Court finds that defendants are entitled to withhold one portion of document # 62 (Blue Minutes of July 29, 1977) pursuant to the deliberative process privilege incorporated into

---

11. Defendants also invoke exemption (b)(7)(A) as a basis for withholding the Final Economic Report. Defendants' index at p. 4. In light of the Court's disposition of defendants' (b)(5) claim, however, the Court finds it unnecessary to rule on the (b)(7)(A) issue.

exemption (b)(5), but must disclose document # 61 (Blue Minutes of May 24, 1977) in its entirety.

 Document # 61 reflects the decision of the Commission on the request of complaint counsel, certified by the administrative Law Judge, in the *Exxon* case for judicial enforcement of subpoenas issued to some of the defendants in that case. Document # 61 consists of seven paragraphs, none of which is entitled to exemption from mandatory disclosure under FOIA. Paragraphs 1, 6 and 7 consist entirely of factual material whose disclosure would not in any apparent way intrude on the deliberative process of the Commission. Paragraphs 2 and 4 reflect the final decision of the Commission on the enforcement matter and therefore fail to satisfy the pre-decisional requirement of the deliberative process privilege. *See Jordan, id.* Paragraphs 3 and 5 indicate how the individual Commissioners voted and, in the case of one Commissioner, the reason for his vote. Paragraph 5 indicates that the votes cast by the Commissioners were to be made part of the public record, presumably by recording the votes in the order that was the result of the Commissioners' action. The order itself represents a final opinion by the Commission and would not be entitled to an exemption under the deliberative process privilege. Because the record of votes cast has evidently been incorporated into this final order the Court finds that this record cannot qualify for a (b)(5) exemption under the deliberative process privilege. The incorporation of what might otherwise be privileged material into a final opinion causes such material to lose its privileged character. *Compare Sears, supra,* 421 U.S. at 161, 95 S.Ct. 1504; *Bristol-Myers Company, supra,* slip op. at 10 and 17. The Court also finds that the reason recorded in the Blue Minutes for the vote of one of the Commissioners is not entitled to the protection of the deliberative process privilege. If a Commissioner chooses to explain his part in a final decision of the Commission contemporaneously with the taking of such a decision this explanation is not predecisional and therefore is not covered by the privilege protecting the deliberative process. *See Jordan, supra,* 192 U.S.App.D.C. at 164–165, 591 F.2d at 773–774.

Document # 62 concerns the Commission's action taken in response to a July 25, 1977 decision of the Court of Appeals for the District of Columbia Circuit requiring the Commission to sequester certain data obtained by complaint counsel in the course of the adjudication of the *Exxon* case. Document # 62 consists of six paragraphs. The first sentence of the first paragraph identifies a D.C. Circuit opinion being referred to the Commission by the General Counsel. This sentence simply describes the subject of the Commissioners' meeting and fails to reveal the deliberative process of the Commission.[12] In the second sentence, however, the General Counsel draws the Commission's attention to a fact that might bear on the Commission's action. The Court finds the second sentence of paragraph 1 exempt under (b)(5) in that its disclosure would reveal the Commission's consultation with the General Counsel, thereby impinging upon the process by which Commission policies are formulated. *See Mervin, supra,* 192 U.S.App.D.C. at 216, 591 F.2d at 825. The second sentence is furthermore not a final opinion itself nor does it appear to have been incorporated into any such opinion. Paragraph 2 recites the final disposition of the sequestration matter by the Commission and is therefore excluded from the deliberative process privilege because it is not predecisional material.[13] Paragraphs 3, 5 and 6 record the procedural mechanics attending the Com-

---

12. The Court notes, in this respect, that the Commission's decision on the matter of sequestration here is already part of the public record in the relevant proceedings. Blue Minutes # 62, ¶¶ 3–5. The situation might well be different if the subject of the meeting were not otherwise disclosed.

13. The decision described in paragraph 2 is also apparently fully incorporated into the Commission's final letter of notification. Blue Minutes # 62, ¶ 2.

mission's decision and therefore do not fall within the deliberative process privilege because they are neither predecisional nor deliberative. Paragraph 4 records the votes of the five Commissioners for the public record. The Court finds that this paragraph falls outside of the deliberative process privilege because the record of the Commissioners' votes has been incorporated into the Commission's final order directing sequestration.

In sum, the Court finds defendants have properly withheld only one sentence from documents # 61 and # 62: the second sentence of paragraph 1 in document # 62. All other portions of these two documents have been improperly withheld by defendants and shall be disclosed to plaintiff pursuant to the Court's order accompanying this memorandum.

With respect to the Final Economic Report, the Court finds the entire document to fall within the privilege of attorney work-product and therefore entitled to exemption under (b)(5). *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1965). The Final Economic Report was prepared by expert consultants, at the direction of and for the guidance of FTC lawyers, and discusses a large range of tactical and strategic issues and options relating to the presentation of the *Exxon* case. It is the essence of the "think-piece" protected as "factual information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant to [a] . . prospective trial." *Jordan v. U. S., supra*, 192 U.S.App.D.C. at 167, 591 F.2d at 776. *See Mervin v. FTC*, 192 U.S.App.D.C. 212, 591 F.2d 821 (1978). It is clear that the Final Economic Report was prepared after the complaint was issued in the *Exxon* case. It was prepared at the direction of the FTC's attorneys in aid of the FTC's prosecution of the *Exxon* case. The Final Economic Report is therefore privileged attorney work-product, Fed.R.Civ.P. 26(b)(3), and exempt from mandatory disclosure under (b)(5) of FOIA. *See Bristol-Myers Company, supra* at 19.