**EXXON CORPORATION, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

Civ. A. No. 78–0530.

United States District Court, District of Columbia.

Aug. 2, 1979.

William Simon, John S. Kingdon, Washington, D. C., for plaintiff.

Mark J. Kurtzmann, U. S. Dept. of Justice, Diane M. Sullivan, Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM

OBERDORFER, District Judge.

This Memorandum records the Court's further consideration of this Freedom of Information Act ("FOIA")[1] case, in which plaintiff Exxon, a defendant in the case of *In the Matter of Exxon Corporation, et al.*, FTC Docket No. 8934 (the "*Exxon* case"), has sought release of all documents in the possession of defendants regarding the *Exxon* case or the issues of that case.[2] On June 15, 1978, defendants moved to dismiss the complaint or, in the alternative, for summary judgment and accompanied their motion with a *Vaughn* index ("Index") of the documents withheld and supporting affidavits. In a Memorandum and Order filed November 17, 1978, the Court granted in part and retained under advisement in part defendants' motion for summary judgment, directing defendants to submit more detailed, supplemental affidavits in support of their motion. Defendants filed a second supplemental memorandum and two additional affidavits on January 15, 1979, and plaintiff filed its opposition thereto on February 13, 1979. In response to the Court's Order of May 14, 1979, defendants filed one additional affidavit on May 24, 1979. On the basis of the reasonably detailed affidavits and index submitted in apparent good faith by defendants, the Court will forego further *in camera* inspection of the documents withheld and proceed to summary judgment. *Compare Mervin v. F.T.C.*, 192 U.S.App.D.C. 212, 217–218, 591 F.2d 821, 826–27 (1978); *Bristol-Myers v. F.T.C.*, 194 U.S.App.D.C. 99, 110 at n. 23, 598 F.2d 18, 29 n. 23 (1978).

For the reasons set out below, defendants' motion for summary judgment is granted with respect to all but one portion of one document; the withheld paragraph of document 52 containing an opinion and recommendation of a Commission attorney shall be released to plaintiff pursuant to the accompanying Order.

In order to prevail on its motion for summary judgment in a FOIA suit, an agency defendant "must prove that each

---

1. 5 U.S.C. § 552 (1976).

2. The factual background of plaintiff's complaint and FOIA request is set out in *Exxon v. F.T.C.*, 466 F.Supp. 1088 (D.D.C.1978).

document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *National Cable Television Association, Inc. v. F.C.C.,* 156 U.S.App.D.C. 91, 94, 479 F.2d 183, 186 (1973). The adequacy of defendants' search for responsive documents has already been fully considered in the Court's Memorandum of November 17, 1978. *See* Memorandum of November 17, 1978, at pp. 10–11. Since neither the submissions of plaintiff nor the affidavits of defendants raise any new issue of inadequacy or bad faith in the search for responsive documents, the Court reaffirms that all reasonably responsive documents have been identified.

The remaining questions concern whether those portions of identified documents not released by defendants have been properly withheld pursuant to the exemptions in FOIA. For the purpose of reviewing the merits of defendants' motion, the Court will consider separately the four categories of documents set out in defendants' *Vaughn* index: Category A, consisting of documents prepared by a panel of economic consultants for the Federal Trade Commission (the "Commission") in connection with the *Exxon* case; Category B, consisting of documents prepared by the Commission staff for the panel of economic consultants; Category C, consisting of other communications between the Commission staff and economists; and Category D, consisting of internal memoranda of the Commission or its staff. After consideration of the application of FOIA exemptions, the issues of segregability and the affirmative indexing and disclosure provisions of 552(a)(2) will be separately addressed.

1. *Category A Documents* (Index Nos. 1–12) [3]

■ Examination of defendants' *Vaughn* index and affidavit of Edward T. Colbert, a complaint counsel in the *Exxon* case (the "Colbert affidavit"), reveals that the only portions of the remaining 11 documents in Category A that have been disclosed to plaintiff consist of various charts taken from public sources, which complaint counsel has deemed would not disclose litigation strategy or the mental impressions of the consultants; all other portions of these documents, including the names of the consultants, have been withheld in reliance on claims of exemptions under subsections (b)(5) [4] and (b)(7)(A) [5] of FOIA.

The portions of the documents withheld were all prepared by economic panelists engaged by the Commission staff as consultants for the *Exxon* case. Colbert affidavit at 2. All of the documents relate, in some manner, to issues dealt with in the Final Economic Report. *Id.* The documents discuss legal and economic issues relevant to the litigation strategy of the *Exxon* case; they contain the economists' opinions and recommendations about the theory. All of the dated documents withheld were prepared after July 18, 1973, the date of filing of the complaint in the the *Exxon* case. The remaining four undated documents also appear, from defendants' index and the Colbert affidavit, to have been prepared after the filing of the complaint in the *Exxon* case.

The documents withheld in Category A are therefore entitled to exemption from disclosure as attorney "work product" under exemption (b)(5). Although prepared by outside consultants retained by the Commission, the documents nonetheless constitute intra-agency memoranda within the meaning of exemption (b)(5). *See Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1078 n. 44 (1971). The documents were

---

3. Document 12, the Final Economic Report, was held exempt as attorney "work product" under exemption (b)(5) after *in camera* inspection by the Court. See *Exxon v. F.T.C., supra,* 466 F.Supp. at 1099.

4. Exemption (b)(5) allows an agency to withhold "inter-agency or intra-agency memorandums of letters which would not be available

by law to a party other than an agency in litigation with the agency."

5. Exemption (b)(7)(A) allows an agency to withhold "investigatory records compiled for law enforcement purposes," but only to the extent that the production would "interfere with enforcement proceedings."

prepared at the direction of the Commission's attorneys after the complaint was issued in *Exxon* and for the specific purpose of analyzing aspects of the theory of the *Exxon* case. Accordingly, the substantive portions of documents in Category A withheld by defendants are exempt as attorney "work product," pursuant to exemption (b)(5). *See Bristol-Myers v. F.T.C.,* 194 U.S. App.D.C. 194, at 104–111, 598 F.2d 18, at 23–30 (1978); *Mervin v. F.T.C.,* 192 U.S.App.D.C. at 217–218, 591 at 826–27 (1978); *Exxon v. F.T.C., supra,* 466 F.Supp. at 1099.

Defendants have also withheld the names of the economists on the economic panel, pursuant to exemption (b)(7)(A). Defendants maintain that each of the economists is sufficiently well known to have such a specific area of expertise and point of view that disclosure of their identities would reveal significant aspects of the *Exxon* case theory selected by the staff attorneys for analysis. Colbert affidavit at 3; Affidavit of Roger B. Pool, (former) complaint counsel in the *Exxon* case (the "Pool affidavit") at 4.

█ The attorney "work product" privilege includes "material which might disclose an attorney's appraisal of factual evidence." *Mervin v. F.T.C., supra,* 192 U.S.App.D.C. at 217, 591 F.2d at 826; *see also Montrose Chemical Corp. v. Train,* 160 U.S.App.D.C. 270, 491 F.2d 63, 67–71 (1974). Defendants' concern that identification of the economic panelists could expose significant aspects of the Commission's theory of the *Exxon* case seems plausible in the context of this intensely litigated matter.[6] Accordingly, the names of the economists are exempt from disclosure under exemption (b)(5) as attorney "work product." This disposition makes it unnecessary to reach defendants' contention that the names of the economists are part of "investigatory records," exempt pursuant to exemption (b)(7)(A). *But compare* n. 9, *infra.*

### 2. *Category B. Documents* (Index Nos. 13–25)

█ The portions of the documents withheld by defendants in Category B were prepared by complaint counsel or Commission staff working on the *Exxon* case and contain factual summaries, questions, analysis and theory produced in connection with the development of the case. All but two of the documents bear a date after the date of filing of the complaint in that case. The remaining two documents, Index Nos. 13 and 17, are undated. Their descriptions show, however, that they were written after the filing of the *Exxon* complaint.

Defendants' index and supporting affidavits demonstrate that the withheld portions of Category B documents are attorney "work product". For example, documents 13 and 14 were

> "prepared by complaint counsel to provide the economic panelists with the background and information necessary to place the *Exxon* case in its proper perspective and to acquaint the economists with the nature of the evidence to be gathered."

Colbert affidavit at 5. The only portions of documents 13 and 14 which have been withheld contain "staff analysis of the information and provide insights into litigation strategy." Colbert affidavit, *id.*

The documents in Category B fall well within the category of "memoranda prepared by an attorney in contemplation of litigation which sets forth the attorney's theory of the case and his litigation strategy." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1965). Accordingly, all portions of the documents withheld are exempt from disclosure pursuant to exemption (b)(5).

### 3. *Category C. Documents* (Index Nos. 26–55)

█ Documents in Category C consist mainly of diverse communications pertaining to the *Exxon* case between economic

---

**6.** Revelation of significant aspects of defendants' theory of the *Exxon* case is also more likely where, as here, the Commission's theory of liability is based primarily on structural economic evidence, rather than on behavior.

consultants and the Commission staff. These communications differ from the documents in Category A in that they are unrelated to the Final Economic Report. Documents 26 and 34 are letters about the economic theory and litigation strategy of the *Exxon* case from Commission staff attorneys to economic consultants retained by the Commission for advice in the case. Colbert affidavit at 7–8. The substantive portions withheld from document 26 contain an "explanation of the focus of a meeting to review certain areas of the theory of the case." Index at # 26. The withheld portions of document 34 "contain a description of the projects being worked on by various staff members and their relationship to the theory of the case." Index at # 34. They consist of "an explanation of the direction and focus of the staff's efforts in relation to specific areas of the case theory," together with the attorney-author's "opinions as to the significance of certain parts of the theory, and an outline of part of the staff's litigation strategy." Colbert affidavit at 8. The withheld portions of both documents 26 and 34 are exempt from disclosure under exemption (b)(5) as attorney "work product". *See Bristol-Myers, supra,* 194 U.S. App.D.C. 99, at 104–111, 598 F.2d 18 at 23–30; *Mervin, supra,* 192 U.S.App.D.C. at 217–18, 591 F.2d at 826–27; *see also* 716, *supra.*

The names of the addressee economists have also been withheld by defendants. Colbert affidavit at 7 and 8. The economists' names could be bright guides to defendants' theory of the *Exxon* case, particularly if disclosed to this sophisticated plaintiff. Defendants are therefore entitled to withhold those names pursuant to the attorney "work product" privilege of exemption (b)(5). *See* 718, *supra; Bristol-Myers, id.; Mervin, id.*

Documents 27–31, 35–40, and 42–47 are letters from an economic consultant to a staff attorney with whom the consultant was working on the *Exxon* case. Defendants' affidavits disclose that withheld portions of these documents contain the consultant's preliminary impressions and recommendations with respect to the *Exxon* case.[7] Colbert affidavit at 7. Accordingly, the withheld portions of these documents are exempt from disclosure under exemption (b)(5) as attorney "work product". *See Bristol-Myers, id.; Mervin, id.; see also,* 716, *supra.*

Documents 32, 41 and 48–51 are letters to and from staff members and economic consultants. Colbert affidavit at 7. The only portion of these documents withheld are the names of the economists referred to in the letters. Defendants are entitled to withhold these names under exemption (b)(5) as part of the attorney "work product" privilege. *See* 718, *supra; Bristol-Myers, id.; Mervin, id.*

Document 33 contains the contracts of the six economic panelists retained by the Commission for the *Exxon* case. The contracts are identical except for the names of the economists. Defendants have withheld only the names of the economists and a paragraph describing the focus of the economic study for the *Exxon* case. Colbert affidavit at 8. For reasons given above, these portions of the documents have been properly withheld pursuant to exemption (b)(5) as attorney "work product". *See* 718, 719, *supra.*

Document 52 is an opinion letter from a Commission attorney to a former economic consultant, indicating whether, in the attorney's view, employment of the economic consultant by an oil company would constitute a conflict of interest in light of the work performed by the economist for the *Exxon* staff. Index at # 52; Colbert

---

7. Defendants' index displays rather unenlightening entries for documents 27–31, 35–40 and 42–47, consisting of the dates of the letters and the reference "See number 26". Document 26 is not a letter written by an economist consultant; it is a letter from Roger Pool, then lead attorney in the *Exxon* case, to an economist.

In response to the Court's Order of May 14, 1979, defendants have stated that reference to document 26 is incorrect; the intended reference was to document 27, a letter from an economist to a staff attorney. Third Supplemental Affidavit of Carol M. Thomas at ¶ 4.

affidavit at 8. Defendants seek to withhold the paragraph containing the opinion and recommendation of the attorney pursuant to the governmental deliberative process privilege of exemption (b)(5). Colbert affidavit, *id.*[8] The deliberative process privilege is designed to protect the "process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 150, 95 S.Ct. at 1516. The opinion of the attorney in document 52, however, is not claimed by defendants to precede any Commission decision or to be related to any process by which Commission policies are formulated. The portion of document 52 containing the opinion of the attorney may not be withheld under the deliberative process privilege because it is neither predecisional nor deliberative. *See Jordan v. Department of Justice,* 192 U.S.App.D.C. 144, 163–165, 591 F.2d 753, 772–74 (1978). This portion of document 52 must therefore be released to plaintiff pursuant to 5 U.S.C. § 552(a)(3) and (4)(B).[9]

Defendants also seek to withhold the names of the economic consultant and the oil company mentioned in document 52 on the grounds that disclosure of the name of the economist would reveal one facet of the Commission's theory of the *Exxon* case and disclosure of the name of the oil company would allow plaintiff to discover the name of the economist. Colbert affidavit at 8–9. Document 52 is not itself privileged as attorney "work product" since, among other things, it was not prepared in anticipation of any litigation. It does, however, contain information which relates to the prepara-

tion of a case for litigation, *viz.,* the name of the economic consultant who had worked with the Commission staff on the *Exxon* case. This explicit reference is entitled to the work product privilege and is therefore exempt, pursuant to exemption (b)(5).[10]

Furthermore, plaintiff does not dispute defendants' position that disclosure of the name of the oil company mentioned in document 52 would enable plaintiff to discover the name of the economist. By necessity, the name of the oil company may be withheld as incident to defendants' valid claim of exemption for the name of the economist.

4. *Category D Documents* (Index Nos. 56–64) [11]

■ The documents in this category consist of internal memoranda of the Commission, its staff and general counsel. Document 60 is a staff attorney's analysis of a particular theoretical model and its potential for application to the *Exxon* case. Colbert affidavit at 10. Document 64 is a manual prepared by a computer company under contract with the Commission detailing proposed litigation strategy and plans for discovery in the *Exxon* case. Colbert affidavit at 10–11. Both documents are therefore exempt from disclosure as attorney "work product" under exemption (b)(5).

■ Document 59 is a memorandum from a Commission staff attorney concerning a telephone conversation between a Commission staff member and a confidential informant employed in the oil industry. Defendants have withheld the name of the

---

8. Defendants made no assertion of an attorney-client privilege between the Commission attorney and the consultant involved. *See* Index ¶ 52; Colbert affidavit at 8–9.

9. If there are segregable portions of this Memorandum which defendants consider to be entitled to exemption, it may, of course, move for reconsideration of the Order accompanying this Memorandum.

10. Defendants once again invoke exemption (b)(7) for "investigatory records" in support of their withholding the name of the economic consultant. In light of the disposition on the ground of attorney "work product" under exemption (b)(5), the Court does not reach de-

fendants' claim, for which they have cited no support, that an opinion letter from a Commission attorney to a former consultant concerning a possible conflict of interest is an "investigatory record compiled for law enforcement purposes" within the meaning of exemption (b)(7)(A).

11. Document 63 has been determined to have a date subsequent to that of plaintiff's FOIA request and therefore not to be a responsive document. Defendants' Second Supplemental Memorandum at n.12, as corrected by the Third Supplemental Affidavit of Carol M. Thomas, May 2, 1979, ¶ 3.

informant pursuant to exemption (b)(7)(D) [12] and a paragraph summarizing a discussion of the *Exxon* case pursuant to exemption (b)(7)(A). The confidential source has received an express assurance of confidentiality. Index at # 59.

Plaintiff does not dispute that the memorandum of the conversation between the staff attorney and the informant is an "investigatory record", since the purpose for its creation "was part of an agency inquiry into specific conduct which might be found to have violated a statute or regulation administered by [the] agency." *Exxon Corp. v. F.T.C.*, 384 F.Supp. 755 (D.D.C.1974). More particularly, plaintiff does not dispute that this record was compiled for a specific law enforcement purpose, *viz.*, prosecution of the *Exxon* case. Defendants have attested to the fact that the informant in question was given an express promise of confidentiality. Index at # 59; Pool Affidavit at 6. Moreover, because the informant was providing information about the industry in which he is employed to an agency currently bringing an enforcement action against that industry an assurance of confidentiality can reasonably be inferred. *Compare Associated Dry Goods Corp. v. N.L.R.B.*, 455 F.Supp. 802, 813–14 (S.D.N.Y. 1978) *with Amway Corp. v. F.T.C.*, CCH 1976–1 Trade Cas. ¶ 60798 at p. 68443 (D.D.C.1976). Accordingly, the name of the informant in document 59 has been properly withheld pursuant to exemption (b)(7)(D).

Defendants have also withheld a paragraph in document 59 outlining the Commission's theory of the *Exxon* case. Because this paragraph occurs in an investigatory record compiled for law enforcement purposes and because disclosure of an outline of the Commission's theory of the *Exxon* case would "interfere with enforcement proceedings" by providing plaintiff with earlier or greater access to Commission investigatory files than it would otherwise have, the paragraph has been properly withheld by defendants pursuant to exemp-

tion (b)(7)(A). *See* H.R.Rep. No. 1497, 89th Cong.2d Sess. (1966), U.S.Code Cong. & Admin.News 1966, p. 2418 reprinted in Freedom of Information Source Book, Sen. Doc. 93–82, Subcommittee on Administrative Practice and Procedure, Senate Judiciary Committee, 93d Cong., 2d Sess., at 32.

■ Documents 56–58 are memoranda to the Commission that are tangentially related to the *Exxon* case. These documents were not found within the file of complaint counsel in the *Exxon* case. They are described in defendants' index and in the Second and Third Supplemental Affidavits of Carol M. Thomas, Secretary of the Commission, dated January 12, 1979 (the "Second Thomas affidavit"), and May 24, 1979 (the "Third Thomas affidavit"), respectively.

Document 56 is a memorandum from two staff attorneys to the Commission concerning a petition for rulemaking by the Independent Terminal Operator's Association. Index # 56. Pursuant to a claim of deliberative process under exemption (b)(5), defendants have withheld opinions and recommendations of the staff regarding the merits of the petition, a discussion of whether to proceed by rulemaking in the petroleum industry, and drafts of proposed responses to the petition. Second Thomas affidavit at 4.

Document 56 is a predecisional, deliberative record exempt from disclosure pursuant to the deliberative process privilege of exemption (b)(5). It is predecisional because it is an intra-agency communication antecedent to the adoption of an agency decision memorialized in the Commission Blue Minute of October 31, 1977. *See NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 151–52, 95 S.Ct. 1504; *Jordan v. Department of Justice, supra,* 192 U.S.App. D.C. 144, at 165, 591 F.2d 753, at 774. It is deliberative because it makes recommendations and expresses opinions to the Commis-

---

**12.** Exemption (b)(7)(D) allows an agency to withhold

"investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (D) disclose the identity of a confidential source . . . ."

sion on legal matters concerning the petition. *See Jordan v. Department of Justice,* supra, 192 U.S.App.D.C. 144, at 165, 591 F.2d 753, at 774. Accordingly, document 56 is exempt from disclosure pursuant to exception (b)(5).

■ Document 57 is a memorandum from the General Counsel of the Commission to the Commission. Index # 57. The portions of the memorandum withheld by defendants contain opinions and recommendations of the General Counsel's Office as to whether to commence a subpoena enforcement action and an analysis of the possibility of compliance by various respondents. Index, *id.* The decision of the Commission in this matter is recorded in the Blue Minute of May 24, 1977.

Document 58 is also a memorandum from the General Counsel of the Commission to the Commission. Index # 58. The portions of the memorandum withheld by defendants contain opinions and recommendations of the General Counsel's office as to an interpretation of the decision of our Court of Appeals in *F.T.C. v. Atlantic Richfield Co.,* 185 U.S.App.D.C. 229, 567 F.2d 96 (1977), requiring temporary sequestration of certain documents from complaint counsel in the *Exxon* case. Index, *id.*; Second Thomas affidavit at 5. The decision of the Commission on this matter is recorded in the Blue Minute of July 29, 1977.

Both documents 57 and 58 are predecisional. Both are antecedent to Commission decisions: *viz.,* whether to begin a subpoena enforcement action, memorialized in the Commission Blue Minute, and the effect to be given the Court of Appeals' decision in *F.T.C. v. Atlantic Richfield Co.* in the *Exxon* case, memorialized in the Commission Blue Minute of July 29, 1977.

Both documents 57 and 58 are also, in relevant part, deliberative. The withheld portions make recommendations and express opinions on legal and policy matters. *See Jordan v. Dept. of Justice, supra,* 192

U.S.App.D.C. 144, at 165, 591 F.2d 753, at 774. The portions of documents 57 and 58 withheld by defendants are therefore exempt as predecisional, deliberative memoranda, pursuant to exemption (b)(5).

### 5. *Segregability.*

#### A. *Exemption (b)(5): Attorney "Work Product" Documents*

■ The Court has further considered defendants' motion for summary judgment in light of the explicit statutory command contained in FOIA, rejecting the "exemption by document" approach, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b); *see Ray v. Turner,* 190 U.S.App.D.C. 290, 300, 587 F.2d 1187, 1197 (1978). FOIA requires disclosure of all reasonably segregable non-exempt material in an otherwise exempt agency record. For reasons stated below, the Court concludes that there are no reasonable segregable, non-exempt portions of any document described in defendants' index in Categories A, B, and C, and documents 60 and 64 in Category D, and determined to be exempt pursuant to exemption (b)(5) as attorney "work product".[13] *See* 717–723, *supra.*

■ Although the attorney "work product" privilege does not extend to pure statements of fact, material which might disclose an attorney's appraisal of factual evidence is exempt from disclosure under exemption (b)(5). *Mervin v. F.T.C., supra,* 192 U.S.App.D.C. at 217, 591 F.2d at 826. Defendants' position with respect to non-exempt factual material contained in its work product documents is that all reasonably segregable factual material is incidental to and bound up with discussion of litigation strategy or matters directly relevant to litigation strategy of the *Exxon* case. Defendants maintain that no reasonably segregable portions of non-exempt, factual ma-

---

**13.** The withheld paragraph of document 52 has been held not to be exempt at all. *See* 716–717 *supra.* The remaining documents in Category D involve a theory of exemption different than attorney "work product"; the present discussion of segregability, therefore, does not apply to them.

terial remain to be disclosed. Defendants' supplemental memorandum at 7–8.

Defendants are entitled to summary judgment on this issue. Defendants have released portions of a majority of the responsive documents to plaintiff. Out of a total of 63 responsive documents relating to the *Exxon* case, defendants have withheld only 25 documents in full. Defendants' disclosure of portions of 60 percent of the documents responsive to plaintiff's FOIA request is a substantial indication that defendants recognize their obligation under FOIA to disclose reasonably segregable, non-exempt portions of otherwise exempt documents.

■ Moreover, the type of non-exempt material relevant to the application of the attorney "work product" privilege is factual material. As our Court of Appeals has recently noted:

"We believe that a strict demarcation between factual and deliberative material (requiring disclosure of the former) is even less helpful here [applied to the attorney work product privilege] than it is in the cases involving the governmental deliberative process . . . [A]n attorney's written product in preparing for litigation, even if factually oriented, seldom can be separated from his tactical and strategic thinking."

*Mervin, supra,* 192 U.S.App.D.C. at 217–218, 591 F.2d at 826–27.

The result is that an agency's assertion that an attorney's "work product" is not further segregable

"permits a court to apply a broader privilege than in those cases where the work-product privilege is not involved."

*Mervin id.*

■ All of the documents at issue here were prepared either by attorneys or at the direction of attorneys in preparation for litigation. In light of defendants' representations that these documents record or re-

flect discussions of litigation strategy with economists and others, and the Court's conclusion that they are attorney "work product," together with the apparent effort of defendants to disclose reasonably segregable, non-exempt portions of documents otherwise exempt, the Court declines to order *in camera* inspection of the remaining documents.[14] *See Mervin id.; Bristol-Myers v. F.T.C., supra,* 194 U.S.App.D.C. 99, at 110 n.23, 598 F.2d 18, at 29 n.23. On the basis of the evidence described above, the Court finds that defendants are entitled to summary judgment on the issue of segregability: to the extent that withheld portions of requested documents contain factual material, that material is

"incidental to and bound up with, discussion of litigation strategy and the deliberative [process] of attorneys actively preparing their [case] for a pending lawsuit."

*Mervin, supra,* 192 U.S.App.D.C. at 217, 591 F.2d at 826.

Accordingly, the Court finds that all reasonably segregable, non-exempt portions of otherwise exempt documents in Categories A, B, and C, and documents 60 and 64 in Category D, have been disclosed to plaintiff.

### B. *Exemption (b)(5): Deliberative Process Privilege and Documents*

Documents 56, 57 and 58 have been found by the Court to have been properly withheld by defendants pursuant to the deliberative process privilege. *See* 721–722 *supra.* The likelihood that non-exempt factual material will be reasonably segregable is greater in the case of the deliberative process privilege than it is in the case of the attorney "work product" privilege. *See Mervin, supra,* 192 U.S.App.D.C. 218, 591 F.2d at 827. As our Court of Appeals has observed:

14. The Court previously ordered defendants to submit for *in camera* inspection the Final Economic Report, document 12, which defendants had withheld in full as attorney "work product" pursuant to exemption (b)(5). Order of

—— 1978. There were no reasonably segregable, non-exempt portions of the Final Economic Report. *Exxon v. F.T.C., supra,* 466 F.Supp. at 1097.

"In the process of administrative decision making, it is likely that factual documents will be developed, for example, by lay personnel without decision making or advisory authority, which can be segregated from deliberative material without difficulty, and with minimal danger that the deliberative process will thereby be excessively exposed."

*Mervin, id.*

■ Documents 57 and 58 are legal memoranda from the General Counsel to the Commission. They are not "factual documents" prepared by "lay personnel" without "advisory authority." In light of the relatively detailed descriptions of these documents in defendants' index and affidavits, together with defendants' apparent good-faith effort to release segregable portions of non-exempt material (documents 57 and 58, for example, have not been withheld in full), the Court concludes that it may rely on defendants' representations, as contained in the sworn statement of the Secretary of the Commission, Carol M. Thomas, that only deliberative portions of documents 57 and 58 have been withheld and that no reasonably segregable, non-deliberative portions have been withheld. *See* Second Thomas affidavit at 5.

The only difference between document 56 and documents 57 and 58 is that document 56 was not authored by the General Counsel but by two staff attorneys. While it may readily be conceded that staff attorneys do not usually possess the advisory authority of the General Counsel, they are nonetheless not "lay personnel" developing "factual" documents, nor may they be presumed to lack advisory authority altogether. Document 56 is a legal memorandum to the Commission concerning the merits of a petition for rulemaking. It contains the opinions and recommendations of the staff attorneys on the merits of the petition. The

document is neither "factual" nor has it been prepared by "lay personnel". In light of the particularity of defendants' description of document 56 and their apparent good-faith effort to release segregable portions of non-exempt material, the Court concludes that it is entitled to rely on the Second Thomas affidavit, affirming that the purely factual and non-deliberative portions of document 56 have been released.

### C. *Exemption (b)(7)(A)*

■ Only document 59 has been held exempt from disclosure pursuant to exemption (b)(7)(A) and only certain portions of document 59 have been withheld: *viz.,* the name of the confidential source (and identifying details) and a paragraph containing a discussion of the litigation strategy of the *Exxon* case. On the basis of defendants' index, affidavits and apparent good-faith showing on the issue of segregability, the Court accepts the sworn representations in the Colbert and Second Thomas affidavits that no reasonably segregable, non-exempt material is contained in document 59.

### 6. *Applicability of 5 U.S.C. § 552(a)(2)(A)–(C)*

■ In addition to the exemptions set out at 5 U.S.C. § 552(b), FOIA contains affirmative indexing and disclosure requirements: Section 552(a)(2)(A)–(C).[15] An agency record otherwise exempt from disclosure under § 552(b) may nevertheless be subject to disclosure if it falls within the scope of § 552(a)(2)(A)–(C). *See e. g., NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504 (1965); *Bristol-Myers Co. v. F.T.C., supra,* 194 U.S.App.D.C. 99 at 105–109, 111–112, 598 F.2d 18, at 24–28, 30–31. In *Sears,* the Supreme Court ruled that Advice and Appeals Memoranda prepared by the General Counsel for the National Labor Relations Board deciding

---

**15.** Section 552(a)(2)(A)–(C) provides that:

"Each agency, in accordance with published rules, shall make available for public inspection and copying—

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

(C) administrative staff manuals and instructions to staff that affect a member of the public  .  .  .."

not to issue a complaint must be disclosed under FOIA. These memoranda were held to be "final opinions" made in the "adjudication of cases" within the meaning of § 552(a)(2)(A) and, as such, were excluded from the predecisional, deliberative privilege contained in exemption (b)(5). *See Federal Open Market Committee of the Federal Reserve System v. Merill,* —— U.S. ——, n.23, 99 S.Ct. 2800, n.23, 61 L.Ed.2d 587 (1979). The Court also observed, in the course of its discussion of the interplay between the deliberative process privilege and the affirmative disclosure requirements of § 552(a)(2)(A)–(C), that it would be "reluctant" to hold that that privilege could ever apply to other documents covered by § 552(a)(2). *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 153–54, 95 S.Ct. 1504; *Federal Open Market Committee of the Federal Reserve System v. Merill, id.* At the same time, the Court held that a memorandum subject to affirmative disclosure under § 552(a)(2)(A) was nevertheless exempt pursuant to the attorney "work product" privilege of exemption (b)(5). *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 160, 96 S.Ct. 1504; *Federal Open Market Committee of the Federal Reserve System v. Merill, id.*

In *Bristol-Myers Co. v. F.T.C.,* our Court of Appeals extended the application of the Supreme Court's reasoning in *Sears* to state that a decision by an agency not to proceed by rulemaking, if accompanied by a statement of reasons, would be subject to the affirmative disclosure and indexing provisions of § 552(a)(2)(B) ("statements of policy and interpretations which have been adopted by the agency") or § 552(a)(2)(C) ("instructions to staff that affect a member of the public"). *Bristol-Myers v. F.T.C., supra,* 194 U.S.App.D.C. 99 at 107 n.13, 598 F.2d at 26 n.13. The Court of Appeals stated that the *Sears* principle barring the application of the deliberative process privilege for such documents applied "by analogy". *Bristol-Myers v. F.T.C., id.* The Court of Appeals went on to comment, with respect to the interplay between the attorney "work product" privilege of exemption (b)(5) and the affirmative disclosure provisions of § 552(a)(2), that

"Although we thus agree with the district court that the documents in these categories are work product, it does not follow that they may be withheld. *Sears* makes it clear that such memoranda lose the protection of exemption 5 to the extent that they have been incorporated by reference in a nonexempt 'final opinion'."

*Bristol-Myers v. F.T.C., supra,* 194 U.S.App. D.C. 99, at 110, 598 F.2d at 29.

The Supreme Court in *Sears* did hold that "if an agency chooses *expressly* to adopt or incorporate by reference" a memorandum otherwise exempt as predecisional into a "final opinion," within the meaning of § 552(a)(2)(A), that memorandum may be withheld only pursuant to some exemption other than the (b)(5) exemption for deliberative predecisional information. The Supreme Court's opinion in *Sears* did not hold, however, that a memorandum privileged as attorney "work product," and therefore exempt under (b)(5), would lose its exemption if it fell within the application of § 552(a)(2), whether directly or by express incorporation or adoption.

Whatever ambiguity may have been detected by our Court of Appeals concerning this point was dispelled by the Supreme Court in *Federal Open Market Committee of the Federal Reserve v. Merill,* —— U.S. ——, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979). The Supreme Court there noted that its observation in *Sears* that exemption (b)(5) is inapplicable to "final opinions" in § 552(a)(2)(A) was

"made in the course of a discussion of the privilege for *predecisional communications.* It should be obvious that the kind of mutually exclusive relationship between final opinions and statements of policy, on one hand, and predecisional communications, on the other, does not necessarily exist between final statements of policy and other Exemption 5 privileges. In this respect, we note that *Sears* itself held that a memorandum subject to the affirmative disclosure requirement of § 552(a)(2) was nonetheless shielded from disclosure under Exemp-

tion 5 because it contained privileged attorney's work product." (Emphasis added)

—— U.S. at —— n.23, 99 S.Ct. at 2813 n. 23.

■ The logic of the Supreme Court's opinion in *Sears* and its comment in *Federal Open Market Committee* indicate that information held to be attorney "work product" is to be judged quite differently with respect to the operation of § 552(a)(2) than information held to be deliberative and predecisional, although both the attorney "work product" privilege and the governmental deliberative process privilege are incorporated into the same (b)(5) exemption of FOIA. In *Sears* the Supreme Court held that if a document is a "final opinion" within the meaning of § 552(a)(2)(A), that document cannot qualify for the deliberative process privilege under exemption (b)(5) because final opinions and predecisional communications are mutually exclusive categories; final opinions and attorney "work product", however, are not mutually exclusive. Thus, a document may be exempt as attorney "work product" under exemption (b)(5) notwithstanding that it is also a "final opinion", or has been incorporated by reference into a "final opinion," within the meaning of § 552(a)(2)(A). *See NLRB v. Sears, Roebuck & Co., supra*, 421 U.S. at 160, 95 S.Ct. 1504.

■ In the present case the documents in categories A, B, C and documents 60 and 64 in category D have been held exempt under the attorney "work product" privilege. Document 59 has been held exempt pursuant to (b)(7)(A). Applying the principles of *Sears*, these documents cannot lose their exempt status by the operation of § 552(a)(2)(A). Nor can they lose their exemption pursuant to § 552(a)(2)(B) or 552(a)(2)(C). *Compare NLRB v. Sears, Roebuck & Co. supra*, 421 U.S. at 160, 95 S.Ct. 1504; *see also Federal Open Market Com-*

*mittee of the Federal Reserve System v. Merill, supra*, —— U.S. at ——, 99 S.Ct. 2800. Accordingly, the Court holds that the affirmative disclosure sections of § 552(a)(2) do not affect the (b)(5) exemption of these documents.[16]

■ Documents 56, 57 and 58 in Category D, which have been held exempt pursuant to the deliberative process privilege of exemption (b)(5), do not fall directly within the scope of 552(a)(2)(A)–(C). Memoranda of legal advice to the Commission are not "final opinions" of the Commission, nor are they "statements of policy" or "interpretations" which have been adopted by the Commission; they are obviously not "administrative staff manuals" or "instructions to staff".

Nevertheless, as indicated, predecisional documents which, by their terms, do not fall within § 552(a)(2)(A)–(C) may lose their exempt status under exemption (b)(5) if an agency chooses expressly to adopt or to incorporate by reference such a document in a final opinion, *see NLRB v. Sears, Roebuck & Co., supra*, 421 U.S. at 161, 95 S.Ct. 1504; or, in statements of policy or interpretations adopted by the agency, or in instructions to staff that affect a member of the public; *see Bristol-Myers, supra*, 194 U.S.App.D.C. 99 at 107 n.13, 598 F.2d 18, 26 n.13.

Documents 56, 57 and 58 were addressed to the Commission and were antecedent to Commission decisions memorialized in the Commission Blue Minutes of October 31, 1977, May 24, 1977, and July 29, 1977, respectively. The Court's *in camera* inspection of those Blue Minutes reveals that none of them expressly adopt or incorporate by reference documents 56, 57 or 58. The Blue Minute of October 31, 1977, refers to document 56 and adopts an accompanying resolution (the resolution was transmitted to the Public Records Section and is therefore presumably publicly available) but does

---

**16.** Even if § 552(a)(2)(A)–(C) were capable of removing the (b)(5) exemption for these documents there would be no cause to do so here. None of the documents mentioned above have ever been transmitted to the Commission or to any individual Commissioner, thereby eliminating them from Commission actions subject to § 552(a)(2)(A)–(C). *See* Second Thomas affidavit at 2–3; Third Thomas affidavit at 1.

not expressly adopt or incorporate by reference whatever reasoning is contained in document 56. *Compare NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 161, 95 S.Ct. 1504. Similarly, the Blue Minute of July 29, 1977, refers to document 58 and adopts an accompanying letter (the letter has been made public; Second Thomas affidavit at 5–6) but does not expressly adopt or incorporate by reference whatever reasoning is contained in document 58. The Blue Minute of May 24, 1977, does not refer to document 57 at all.

Accordingly, for the reasons set out above, the Court concludes that documents 56, 57 and 58 are not subject to the affirmative disclosure requirements of § 552(a)(2)(A)–(C).