EXXON CORPORATION, Appellant

v.

FEDERAL TRADE COMMISSION, et al.

No. 79–1995.

United States Court of Appeals, District of Columbia Circuit.

Argued March 26, 1980.

Decided October 3, 1980.

**5.** Maj. Op. at 117.

**6.** *Id.*

Robert G. Abrams, Washington, D. C., with whom William Simon, John S. Kingdon, Stuart H. Harris and R. Bruce Beckner, Washington, D. C., were on the brief, for appellant.

Burton D. Fretz, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before WRIGHT, Chief Judge, SWYGERT [*], United States Circuit Judge for the Seventh Circuit, and ROBINSON, Circuit Judge.

Opinion for the Court filed by Circuit Judge SWYGERT.

SWYGERT, Circuit Judge:

This appeal in a suit brought under the Freedom of Information Act [1] presents two questions. The first is whether the district court erred by denying plaintiff Exxon Corporation's motion for discovery under Rule 56(f), Fed.R.Civ.P., concerning possible waiver by the Federal Trade Commission of its claimed exemption under the Act. Exxon contends that, as a result of that denial, the district court prematurely considered the FTC's motion for summary judgment solely on the basis of the Commission's affidavits. The second is whether the district court correctly granted summary judgment in favor of the FTC. Because we conclude that the court did not err on either point, we affirm.

I

On July 18, 1973, the FTC issued an administrative complaint against the eight leading companies in the petroleum industry, including Exxon, alleging that the companies have monopolized the domestic refinery industry in violation of the Federal Trade Commission Act, 15 U.S.C. § 45 (1976). In preparing for the prosecution of

---

[*] Sitting by designation pursuant to 28 U.S.C. § 291(a).

[1] 5 U.S.C. § 552 (1976), hereafter referred to as "the Act."

the so-called "*Exxon* case," [2] which is presently in the pretrial discovery phase, the FTC has hired a number of economists who are furnishing advice and assistance on issues and strategic options relevant to the trial. Much of their advice has been placed on paper in a "Final Economic Report," which the FTC describes as an "in-depth evaluation of aspects of the theory of the case and the evidence supporting these aspects, discussions of possible future litigation strategies, and areas of possible inquiry for further economic analysis." [3]

Exxon, understandably anxious to obtain a copy of the Economic Report and to learn the identities of the six economists who prepared it, has pursued two routes attempting to achieve those ends: one in federal court and the other in the agency adjudicative proceeding. On October 25, 1977, Exxon made a Freedom of Information Act request for all materials relating to the *Exxon* case "which constitute, refer or relate to any oral or written communication made between January 1, 1977 to [October 25, 1977]": (a) between any Commissioner of the FTC (or any member of the Commissioner's staff) and any FTC employee, (b) between any Commissioner (or staff member) and any private party, and (c) between any FTC employee and any private party.[4] In response, by letter from the Secretary of the FTC, partial access to the approximately eight hundred pages of responsive documents not in the public records was permitted. After Exxon appealed that decision within the agency, the Commission released additional documents. The remaining documents, which constitute approximately 375 pages or 47 percent of the responsive data not in the public records, were withheld by the FTC on the basis of Exemptions 5 and 7 of the Act.[5] Following that decision of the FTC, on March 24, 1978, Exxon initiated this Freedom of Information Act litigation in the district court.

On April 17, 1978, the same day that the FTC was served with the federal complaint,[6] Exxon filed a motion with the Administrative Law Judge in the FTC adjudicative proceeding seeking the issuance of a subpoena *duces tecum* to direct complaint counsel, Roger B. Pool, to produce the Economic Report. On June 2, 1978, the Administrative Law Judge denied the motion on the ground that the Economic Report constituted attorney work product and therefore not producible under the relevant discovery rules.

Meanwhile, in the district court, Exxon began a series of aborted discovery efforts. On April 19, 1978, Exxon served Michael Sohn, FTC General Counsel, and Carol Thomas, Secretary, with a first set of interrogatories; on May 4, 1978, Exxon served the FTC with a notice of the deposition of Kenneth Elzinga, an economics professor at the University of Virginia who, according to Exxon, was one of the contributors to the Economic Report. The FTC responded by moving for a protective order as to both the interrogatories and the deposition. On May 19, 1978, a hearing was held in the district court. At that time, Exxon stated it was attempting to discover information that might support a theory that the FTC had waived any protection under Exemption 5 of the Act for the Economic Report by disclosing portions of the document to a Commissioner in violation of the Commission's Rules of Practice. Rule 4.7 of the Commission's Rules of Practice, 16 C.F.R. § 4.7 (1980), prohibits *ex parte* communications concerning the merits of an agency adjudicative proceeding between the decisionmakers and interested persons outside

---

**2.** *In the Matter of Exxon Corporation, et al.,* FTC Docket No. 8934.

**3.** Brief for Appellee at 3.

**4.** Letter from William Simon, counsel for Exxon, to Carol M. Thomas, Secretary of the FTC, October 25, 1977, App. 34.

**5.** 5 U.S.C. §§ 552(b)(5), (7) (1976).

**6.** In addition to the Federal Trade Commission, the named defendants in the case are four of the Agency's Commissioners who held office at the time the case was initiated, Michael Pertschuk, Paul Rand Dixon, Elizabeth Hanford Dole, and David A. Clanton, Secretary Carol M. Thomas, and General Counsel Michael N. Sohn.

of the agency. The rule also prohibits certain additional classes of communications from being made off the record. In an adjudicative proceeding, communications between members of the Commission and either investigating or prosecuting employees of the Agency or outside parties which relate to the merits of the proceeding may not be made ex parte. If such a communication does occur, the communication must be placed on the public record pursuant to Rule 4.7(c).[7] According to Exxon, if such communications had occurred in this case, the Economic Report could no longer be protected from disclosure. No mention of this theory had appeared up to that time in court papers; nor had it been argued before the Administrative Law Judge. After the hearing, the district court denied the motion as to the interrogatories, but, although ordering that Professor Elzinga not be deposed at that time, did not decide plaintiff's right to a deposition after the FTC had filed its motion to dismiss or, in the alternative, for summary judgment. Exxon immediately moved to compel the General Counsel and Secretary to answer the interrogatories.

The defendants then filed objections to Exxon's interrogatories with the district court on the grounds that the individual defendants were not proper parties to the case under 5 U.S.C. § 552(a)(4)(B) [8] and that

the requested information enjoyed the work product privilege. Next, on June 15, 1978, the FTC moved for dismissal, or in the alternative, summary judgment. The motion was accompanied by supporting memoranda, an index to the responsive documents, and affidavits of the chief complaint counsel, Roger Pool, and the Secretary of the FTC, Carol Thomas.

Exxon responded to the FTC's motion with a motion for limited discovery under Rule 56(f), Fed.R.Civ.P.[9] Although Exxon did not articulate in the motion a basis for its request, the purpose can be extracted from the depositions upon written questions that Exxon sought from each of the four Commissioners who held office at the time this litigation was initiated.[10] The questions concerned the Commissioners' exposure, if any, to the Economic Report and oral communications between the Commissioners and any other person concerning issues in the Exxon case. Exxon also requested the depositions upon oral examination of Professor Elzinga, Keith Golden, an FTC paralegal who was primarily responsible for the search of the requested documents, and Roger Pool. The FTC then filed a motion for close of discovery or, in the alternative, for a protective order on the basis that "further discovery would at best only be cumulative and would be of no help to plaintiff in its further prosecution of the

---

7. Rule 4.7(c) states:

   A Commissioner, the Administrative Law Judge or any other employee who is or who may reasonably be expected to be involved in the decisional process who receives or who makes or knowingly causes to be made, a communication prohibited by ... this section shall promptly provide to the Secretary of the Commission: (1) All such written communications; (2) memoranda stating the substance of and circumstances of all such oral communications; and (3) all written responses, and memoranda stating the substance of all oral responses to the materials described in clauses (1) and (2) of this subsection. The Secretary shall make relevant portions of any such materials part of the public record of the Commission, ... and place them in the docket binder of the proceeding to which it pertains, but they will not be considered by the Commission as part of the record for

purposes of decision unless introduced into evidence in the proceeding. The Secretary shall also send copies of the materials to or otherwise notify all parties to the proceeding.

8. 5 U.S.C. § 552(a)(4)(B) (1976) provides that cases of this nature may be filed only against an "agency."

9. Rule 56(f), Fed.R.Civ.P., provides:
   When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

10. See n. 6 supra.

case." [11] On July 31, 1978, Exxon again responded, this time more fully, to the FTC's motion for summary judgment, stating it was unable to respond to the motion without first obtaining facts.

Following the filing of the parties' motions, a hearing was held in district court. On August 11, 1978, the court stayed discovery pending a determination of the summary judgment motion. Exxon, tenacious in its discovery efforts, then filed two supplemental Rule 56(f) affidavits. The first contended that the FTC in the index to documents attached to its summary judgment motion admitted that *ex parte* communications had in fact occurred between the Commissioners and the staff with respect to the *Exxon* case—the substance of which had not been put in the public record. The second stated that its request for limited discovery was further justified on two grounds: (1) an article appearing in a private trade publication that revealed a meeting between Chairman Michael Pertschuk and several economists allegedly involved in the Economic Report during the period the economists were under contract to evaluate the *Exxon* case, and (2) a letter released to Exxon from the assistant director of the Bureau of Competition to a private citizen that mentioned the *Exxon* case and had a handwritten notation that the letter had been sent to the Office of the Chairman.

Despite the additional affidavits, the district court in its partial summary judgment order of November 17, 1978 rejected Exxon's argument that it was entitled to pursue discovery by written interrogatories and oral depositions under Rule 56(f). *Exxon Corp. v. FTC*, 466 F.Supp. 1088 (D.D.C. 1978). Concerning the request to discover facts about any *ex parte* communications and possible waiver of the FTC's Exemption 5 claim, the district court specifically held that, "[p]laintiff . . . has advanced no reasons for the conclusion that defendants have, by their actions, made the application of the work product privilege inappropriate." *Id.* at 1095. Turning then to the merits, the district court granted partial summary judgment in favor of the FTC. In regard to the Economic Report, the district court, following an *in camera* inspection of the document, concluded that the Economic Report fell within the scope of the attorney work product privilege, as defined in Fed.R.Civ.P. 26(b)(3), and thus was shielded from disclosure by Exemption 5. *Id.* at 1099. This appeal followed.[12]

## II

The underlying issue raised by Exxon is that an alleged disclosure of the Economic Report to an FTC commissioner acting in a judicial capacity waived a claim of work product privilege that might attach to the document, and therefore, render unjustifiable the FTC's reliance on Exemption 5. This case, however, turns upon a threshold question: did the district court abuse its discretion by denying Exxon's request to discover facts relating to the alleged disclosure so that it could respond to the FTC's motion for summary judgment?

Exemption 5 of the Act protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." [13] The district court ruled that this exemption was applicable to the Economic Report because it constituted attorney work product:

The Final Economic Report was prepared by expert consultants, at the direction of and for the guidance of FTC lawyers, and discusses a large range of tactical and strategic issues and options relating to the presentation of the *Exxon* case. . . . It is clear that the Final Economic Report was prepared after the complaint was issued in the *Exxon* case. It was prepar-

---

**11.** Memorandum in Support of FTC's Motion for Close of Discovery or in the Alternative for a Protective Order, July 18, 1978, App. 196.

**12.** On August 2, 1979, the district court ruled on the remainder of the FTC's request for sum-

mary judgment. *Exxon Corp. v. FTC*, 476 F.Supp. 713 (D.D.C.1979). No part of that ruling is at issue here.

**13.** 5 U.S.C. § 552(b)(5) (1976).

ed at the direction of the FTC's attorneys in aid of the FTC's prosecution of the *Exxon* case.

*Exxon Corp. v. FTC, supra,* 466 F.Supp. at 1099.

Before reaching that conclusion, the district court denied Exxon's request for limited discovery pursuant to Rule 56(f). Concerning Exxon's contention that discovery by written interrogatories was necessary to uncover facts about the possible waiver by the FTC of its Exemption 5 defense because of an *ex parte* disclosure to a commissioner, the district court stated:

> Plaintiff's argument is misconceived ... in that it supposes the availability of Exemption (b)(5) to turn on the particular circumstances relevant to discovery between plaintiff and defendant in the *Exxon* case.... [T]he question [is] whether a private party, not a particular litigating plaintiff, would routinely be entitled to the documents through discovery.... [T]he claims of a particular litigant related to a particular lawsuit cannot affect the application of Exemption (b)(5) in an independent FOIA action.

*Id.* at 1096 (citations omitted). Based on this reasoning, the district court concluded that Exxon's request for limited discovery on the theory that the FTC waived the work product privilege was "unnecessary because it would be irrelevant." *Id.* We rule that the district court's decision to cut off discovery was not an abuse of discretion. Unlike the district court, however, we believe it is unnecessary to consider the tantalizing underlying conundrum presented by Exxon, because we find that the facts supporting the allegation that one or more of the economists might have disclosed the contents of the Economic Report to a commissioner are insufficient even to allow Exxon to pursue discovery of this matter.

### A.

■ Summary judgment is proper under Rule 56, Fed.R.Civ.P., only when "there is no genuine issue as to any material fact and

... the moving party is entitled to a judgment as a matter of law." Upon such a motion, the function of the district court is to determine whether any pertinent factual controversy exists, and in reviewing the record before it, the district court must give the party against whom the motion is made the most favorable view of the record if there is doubt as to the sufficiency of a factual showing.

■ In Freedom of Information Act cases, this court has held that the agency claiming an exemption from the duty to disclose information has the burden of proof and the district court should apply that burden with the knowledge that the plaintiff is at a distinct disadvantage in attempting to test the claims alleged by the agency. *Schaffer v. Kissinger,* 505 F.2d 389, 391 (D.C.Cir.1974). Furthermore, as stated in *National Cable Television Association, Inc. v. FCC,* 479 F.2d 183 (D.C.Cir.1973), a Freedom of Information Act case where the Government refused to release requested documents and we reversed the summary judgment for the Government:

> To prevail, the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.

An agency may satisfy this burden with affidavits, *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978), and the opposing party then must controvert that showing.

■ Under Rule 56(f),[14] the district court may defer ruling on a motion for summary judgment and "permit affidavits to be obtained or depositions to be taken or discovery to be had," so that the nonmoving party may obtain the information necessary to show an issue of fact in dispute. The district court may also deny summary judgment where the nonmoving party "shows the necessary facts exist but for some good reason he is unable to produce them on the motion." *Donofrio v. Camp,* 470 F.2d 428, 431 (D.C.Cir.1972). It is well settled that

---

**14.** *See* n. 9 *supra.*

"[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." *Marks v. United States Dept. of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).

█ Exxon has persisted throughout the course of this litigation in its allegation that the FTC's staff might have made the contents of the Economic Report known to "third parties," e. g., one or more of the commissioners.[15] In an affidavit attached to Exxon's Rule 56(f) motion, John S. Kingdon, counsel for Exxon, stated that this case presents genuine factual issues concerning whether any commissioners or members of their staffs "became aware of documents reflecting the subject matter of an economists' study regarding [the] pending [*Exxon* case]," but that without such discovery Exxon would not be able "to establish that defendants waived the exempt status of . . . the Economists' Report, and are, therefore, without any legal right to withhold such documents from Exxon."[16] We believe there are simply no facts in the record before us that justify Exxon's request to make discovery.

The Kingdon supplemental affidavits[17] rely on three pieces of evidence to support the argument raised in the Rule 56(f) request that there is a factual issue whether prohibited *ex parte* communications took place. We find nothing in this evidence that places in dispute the FTC's contention that the Economic Report is shielded from disclosure under Exemption 5.

Both in this court at oral argument and in the district court, Exxon relied most heavily on an article in *FTC: WATCH*,[18] a private publication, as a basis for its Rule 56(f) request. Following a close reading of that entire paper, we conclude that it offers no support for Exxon's contention that a commissioner or a commissioner's staff received information, by written or oral communication, concerning the Economic Report from one or more of the authoring economists. The January 13, 1978 issue of *FTC: WATCH* states that the economists who worked on the Economic Report included F. Michael Scherer and Michael Mann of Northwestern University and Boston College, respectively. The same publication also reports in a subsequent article that these two persons met with Chairman Pertschuk during the summer of 1977. By means of disclosed documents, Exxon learned that the panel of economists worked on the Report during the summer of 1977. On the basis of this information, Exxon sought discovery by written interrogatories from the members of the FTC to uncover whether any prohibited *ex parte* communications relating to the Economic Report took place during the meeting. The language of the *FTC: WATCH* article itself, however, belies Exxon's claim that the article justifies limited discovery. First, the publication, when discussing the Pertschuk meeting, states it was "an event unrelated" to the earlier report concerning which economists were involved in the development of the Economic Report. According to the paper, "the session . . . produced a theoretical discussion of areas of research available to the FTC's economic staff."[19] Additionally, the credibility of the article's statement that Scherer and Mann were members of the panel that produced the Economic Report is suspect: the article merely states, "[i]t is understood" that those two economists were part of the group reviewing the *Exxon* litigation.[20] The FTC has never revealed the identity of the panel.

---

**15.** Affidavit of John S. Kingdon, counsel for Exxon, July 31, 1978, App. 208 at 2–3.

**16.** It is Exxon's theory that the commissioners, when acting in a judicial capacity after issuance of an administrative complaint, are "third parties" vis a vis the FTC prosecutorial staff, and disclosure to the commissioners of the privileged work product document constitutes a waiver of the claimed privilege. The FTC responds that even if disclosure to a commissioner had occurred, Exemption 5 is not waived. As noted earlier, in light of our holding, it is unnecessary to reach this issue.

**17.** Affidavits of John S. Kingdon, App. 217 and 229.

**18.** *FTC: WATCH*, January 13, 1978, App. 235.

**19.** *Id.* at 6.

**20.** *Id.* at 4–5.

Also relied on by Exxon and submitted with its Rule 56(f) request is a letter released to Exxon, dated January 8, 1977, from David J. Saylor, Assistant Director of the Bureau of Competition, to a private citizen who is a Mobil Corporation dealer.[21] The portion of the letter specifically relied on by Exxon states that possible changes in dealer-supplier relationships in the gasoline industry

> will have to come through either the *Exxon* case or legislation by Congress. Such changes might involve some form of divestiture of marketing outlets on the part of the oil companies. While divestiture in the areas of crude production and refining would be of the most value, such an action would nevertheless go a long way towards solving the problems increasingly confronted by dealers.[22]

A handwritten notation on the bottom of the letter indicates that the "Office of the Chairman" received a copy of the letter. Exxon requested discovery of the circumstances surrounding dissemination to the Chairman of the letter to support its *ex parte* communication argument. We have read the letter and find that any connection it might have with a dissemination to a commissioner of the Economic Report is too attenuated to support Exxon's request.

We also note that the statement "Office of the Chairman" does not automatically mean that the letter was read by the Chairman or even that it was directed to the Chairman personally. As the FTC pointed out in the district court, without dispute, the Office of the Chairman is the "repository for many of the historical files of the Commission":[23]

[The Saylor letter] could have been sent to these files for any number of reasons, and never have been seen by the Chairman or any of his attorney advisors.

In summary, the Saylor letter creates no real issue of fact in this case.

Lastly, the Kingdon affidavit points to a statement contained in the FTC's June 15, 1978 memorandum in support of summary judgment as a "clear admission" that *ex parte* communications occurred between the commissioners and the FTC with respect to the *Exxon* case. The portion of the FTC memorandum relied on by Exxon describes documents under "Category B" of defendants' index to responsive documents (papers prepared by FTC staff for the economic panel) as including "several communications between the staff and the Commissioners, containing advice, recommendations, and opinions, relating to other matters which also touched on the *Exxon* case."[24] We are not persuaded that this statement, like the other material offered by Exxon, is sufficient to justify further discovery. The record reveals that the Economic Report is not a "Category B" document, but rather is included under "Category A" (papers prepared by economists). There is nothing in the statement offered by Exxon that relates to the Economic Report, which is in dispute here.

■ In summary, Exxon has failed to show that the requested discovery was necessary to oppose the FTC's summary judgment motion. It is not the intent of Rule 56 to preserve purely speculative issues of fact for trial, such as those raised in this case.[25]

21. Letter from David J. Saylor, Assistant Director of the Bureau of Competition, to Jerry A. Blanton, January 8, 1977, App. 224.

22. *Id.* at 2.

23. Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment, September 1, 1978, Tr. 30 at 5 n. 4.

24. Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment, June 15, 1978, Tr. 17, at 11 n. 9.

25. The cases relied on by Exxon to support its argument that limited discovery should be granted here are inapposite. In those cases, discovery was requested on issues material to the development of an adequate Freedom of Information Act record. For example, the adequacy of the identification of withheld documents and not collateral questions concerning possible violations of agency rules was at issue in *National Cable Television Association, Inc. v. FCC, supra,* 479 F.2d at 190–93. Here, we are not faced with the same situation.

**B.**

█ Contrary to Exxon's contention, we find that the materials upon which the FTC relied to support its summary judgment motion are adequate. The Commission provided a detailed index of documents withheld, and the affidavits of Pool and Thomas, which discuss the claim of exemption and attest to the adequacy of the search for response documents, are nonconclusory and relatively detailed. Additionally, the Thomas affidavit speaks to the question of *ex parte* contacts, revealing that "[a]ll documents located in any Commissioner's office were either public record documents or copies of internal memoranda also contained in the files of the Bureau of Competition or the Office of General Counsel."[26] The FTC, in its supplemental memorandum in support of summary judgment, stated that any *ex parte* communications concerning the merits of the *Exxon* case had been placed in the public record.[27] We further note that there are no allegations of bad faith by the FTC in the course of this litigation. In light of these circumstances, we reach the conclusion that the district court did not abuse its discretion by denying Exxon's discovery request and proceeding with the merits of the case. *See Goland v. CIA, supra,* 607 F.2d at 352.

**III**

Since we hold that the district court did not abuse its discretion by denying Exxon's Rule 56(f) motion, and that there is no material issue of fact present, the final question relates to the merits of the case. Is the Economic Report shielded from disclosure on the basis of Exemption 5? Our answer is yes.

The FTC asserts here, as it did in the district court, that the attorney work product privilege justifies the continued withholding of the document at issue. The district court, following an *in camera* inspec-

tion, agreed that the entire Economic Report was privileged attorney work product under Fed.R.Civ.P. 26(b)(3), and held that the document was shielded from mandatory disclosure on the basis of Exemption 5. *Exxon Corp. v. FTC, supra,* 466 F.Supp. at 1099.

█ As noted earlier, Exemption 5 of the Act protects from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[28] As discussed in *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975), the Exemption is intended "to exempt [from disclosure] those documents, and only those documents, normally privileged in the civil discovery context." At least since the decision of the Supreme Court in that case, it has been settled that the attorney work product privilege as defined in Fed.R.Civ.P. 26(b)(3), falls within the parameters of Exemption 5. *Id.* at 155–56, 95 S.Ct. at 1518–1519. Thus, if a disputed agency document enjoys the work product privilege from discovery, it will also enjoy protection from disclosure by Exemption 5. In order to fall within the privilege, the withheld document must "relate to the conduct of either on-going or prospective trials; [it must] include factual information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant to any on-going or prospective trial." *Jordan v. United States Dept. of Justice,* 591 F.2d 753, 775–76 (D.C.Cir.1978).

█ Applying these precedents to the record before us, we believe that the Economic Report falls squarely within the work product rule. The document is described by the FTC in the Index to Documents as an "in-depth evaluation of aspects of the theory of the case and the evidence supporting these aspects, discussions of possible future

**26.** Affidavit of Carol M. Thomas, Secretary of the FTC, App. 139.

**27.** *See* Supplemental Memorandum in Support of Defendants' Motion For Summary Judgment, *supra,* at 5.

**28.** *See* n. 13 *supra.*

litigation strategies, and areas of possible inquiry for further economic analysis." [29] Exxon has never disputed that characterization. Accordingly, we agree with the conclusion of the district court that the Economic Report is covered by Exemption 5.

We parenthetically note that even though the Freedom of Information Act does not provide relief for plaintiff in this case, a remedy may lie elsewhere. As indicated earlier,[30] Exxon, in the course of the adjudicative proceeding, made a request for discovery of the disputed document in this case. The request was denied by the Administrative Law Judge on the basis of the work product privilege and that Exxon failed to establish that the Economic Report was unavailable from other sources as required by the Commission's Rules of Practice. That ruling, we believe, could be adequately considered by the Commission as part of a review of the Administrative Law Judge's final determination. Additionally, the questions whether the FTC may have waived its claim of privilege and whether the Commission failed to place on the public record the existence of any *ex parte* communications involving the Economic Report are ones better resolved not in this court under the guise of a Freedom of Information Act case, but in the administrative proceeding. The decision relating to those questions is, in turn, reviewable by the court of appeals on review of the final Commission order, if adverse to Exxon. *See* 15 U.S.C. § 45(c) (1976); *Maremont Corp. v. FTC*, 431 F.2d 124, 128 (7th Cir. 1970) (holding that collateral attack in a district court on various pretrial rulings by FTC hearing examiner and by Commission, including allegation of improper *ex parte* contact "are best resolved in [a] court of appeals when the final agency action is challenged").

The judgment of the district court is affirmed.

**29.** *See* n. 3 *supra.*

**30.** *See* discussion in text *supra* at p. 3.